Hattie Rothschild et al., Individually and as Executors of and Trustees under the Will of Caroline Strauss, Deceased, Respondents, *v.* Title Guarantee and Trust Company, Appellant.

Equitable estoppel — payment of interest upon forged bond and mortgage by the purported mortgagor — when such payment operates as an equitable estoppel against mortgagor or her representatives and prevents her executrix from maintaining an action to cancel the mortgage.

1. Where a person wronged is silent under a duty to speak, or by an act or declaration recognizes the wrong as an existing and valid transaction, and in some degree at least gives it effect so as to benefit himself or so as to affect the rights or relations created by it between the wrongdoer and a third person, he acquiesces in and assents to it and is equitably estopped from impeaching it.

2. When a party with full knowledge, or with sufficient notice of his rights and of all the material facts, freely does what amounts' to a recognition or adoption of a contract or transaction as existing, or acts in a manner inconsistent with its repudiation, and so as to affect or interfere with the relations and situation of the parties, he acquiesces in and assents to it and is equitably estopped from impeaching it, although it was originally void or voidable.

3. About one year after the making of a loan by a trust company on the security of a bond and mortgage purporting to be executed by a person now dead, such decedent acquired full knowledge that the loan had been made upon such security and that her signature had been forged thereon by the procurement of her son who had negotiated the loan and received the checks therefor, and having such knowledge she caused to be paid to the trust company out of her own moneys two installments of interest due on the mortgage.  The son thereafter disappeared and his whereabouts has not been discovered.  In an action against the trust company by the executrix of the decedent to compel the company to cancel the mortgage, *held,* that, while the silence of the decedent on the subject did not estop her or her representatives from impeaching the securities, the payment of interest by her worked an equitable estoppel against her and her successor in interest.

*Rothschild* v. *Title Guarantee & Trust Co.,* 139 App. Div. 672, reversed.

(Argued January 16, 1912; decided February 20, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered August 4, 1910, affirming a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material are stated in the opinion.

*Lynn C. Norris* and *Edward M. Perry* for appellant. The plaintiffs are estopped from denying the validity of the mortgage. (Bigelow on Estoppel [5th ed.], 570, 596; *Thompson* v. *Simpson*, 128 N. Y. 2; *Viele* v. *Judson*, 82 N. Y. 32; *Howard* v. *Duncan*, 3 Lans. 174; *Title G. & T. Co.* v. *Haven*, 126 App. Div. 802; *Cram* v. *Seton & Bunker*, 1 Hall, 262; *Cady* v. *Shepherd*, 11 Pick. 400; *Swan* v. *Stedman*, 4 Metc. 548; *McIntyre* v. *Park*, 11 Gray, 102; *Holbrook* v. *Chamberlin*, 116 Mass. 155; *Voorhis* v. *Olmstead*, 3 Hun, 744; affd., 66 N. Y. 113; *Continental Nat. Bank* v. *Nat. Bank of Commonwealth*, 50 N. Y. 575.)

*Edward T. Horwill* for respondents. The devisees of Caroline Strauss are not estopped from asserting that the signature to the mortgage was forged by reason of the payment of interest. (Bigelow on Estoppel [5th ed.], 639; *Walrath* v. *Redfield*, 18 N. Y. 457.) It is not necessary for the owner of real estate, if her own interests do not require it, to attack a forged mortgage on her property. (*Meley* v. *Collins*, 41 Cal. 663.) Caroline Strauss was under no obligation to inform the defendant of the forgery. (*Thompson* v. *Simpson*, 128 N. Y. 270; *Hollins* v. *Hubbard*, 165 N. Y. 534; *Hardin* v. *Dolge*, 46 App. Div. 416.) The appellant cannot succeed unless it is shown that Caroline Strauss by her conduct willfully, or negligently, induced the Title Guarantee and Trust Company to omit to do something which it would otherwise have done but for such conduct. (*Garlinghouse* v. *Whitwell*, 51 Barb. 208; *Barnard* v. *Campbell*, 55 N. Y. 456; *Trenton Banking Co.* v. *Duncan*, 86 N. Y. 221.)

COLLIN, J.  The plaintiffs as the executrices and devisees under the probated will of Caroline Strauss demand a judgment compelling the defendant to cancel and discharge of record a mortgage, in form, held by it upon premises owned by the testatrix at the time of her death and devised to them.  The mortgage, dated and recorded November 6, 1899, purported, on its face, to have been executed by Caroline Strauss and Baldwin F. Strauss, her husband, to the defendant to secure their bond of even date for $2,000, to mature November 6, 1902, with interest from its date to be paid April 1, 1900, and thereafter semi-annually.  Caroline Strauss did not execute, and was wholly ignorant of the negotiations for and the giving of the instruments.  Her name thereon was forged.  Baldwin F. Strauss, the son of Caroline, negotiated the loan, effected the execution of the bond and mortgage and received the $2,000 paid by the defendant in two checks to the order of Caroline Strauss and Baldwin F. Strauss.  He was an attorney in Brooklyn, receiving an income of several thousands of dollars a year and of good reputation until his disappearance in March, 1903.  About one year after the making of the loan, Caroline acquired full knowledge that it had been made upon the security of the said instruments and that her signature had been forged thereon by the procurement of Baldwin, and, having such knowledge, on or about November 27, 1900 caused to be paid to the defendant out of her own moneys the six months' interest due October 1, 1900; and on or about May 1, 1901, caused to be paid to the defendant out of her own moneys the interest which then became due.  Each other interest payment up to and including that which became due October 1, 1904, was made at or soon after its maturity, but it does not appear in the defendant's books of account, duly kept in the ordinary course of its business, who made any of the payments, including those caused to be made by Caroline.  Caroline died December

21, 1903.   Soon after October 28, 1904, the defendant
acquired its first knowledge or notice of the forgeries,
and refused upon the demand of the plaintiffs to surren-
der the mortgage.   Since Baldwin F. Strauss' disappear-
ance, defendant has made diligent search and inquiry
for him and has learned that he left the state, but has
been unable to discover his whereabouts or whether he is
still alive.   The trial court rendered its judgment, which
the Appellate Division affirmed, that the mortgage was a
cloud upon the plaintiffs' title and should be discharged and
surrendered by the defendant.   The appellant contends
that the facts as found did not authorize the judgment.

A principle of law is: Where a person wronged is silent
under a duty to speak, or by an act or declaration recog-
nizes the wrong as an existing and valid transaction, and
in some degree, at least, gives it effect so as to benefit
himself or so as to affect the rights or relations created
by it between the wrongdoer and a third person, he
acquiesces in and assents to it and is equitably estopped
from impeaching it.   This principle is applicable to the
facts found and requires the reversal of the judgment.

When Caroline Strauss acquired, about one year after
the transaction between the defendant and her son, full
knowledge of the facts constituting the transaction, the
right of action to compel the defendant to discharge the
mortgage was vested in her.   It was a cloud upon her
title to the lands it described, impeachable only by
extrinsic evidence proving that it was not her act or
deed and was executed without her knowledge or author-
ity.   Nor did the protection of her property lie solely in
that right of action.   She might have defended against
an attempted enforcement of it by foreclosure, upon the
facts constituting her right of action for its cancellation.
(*Viele* v. *Judson*, 82 N. Y. 32.)   She did not lose this
right of action or protection by her silence.   The law
does not withdraw its remedies from a person against
whom a wrong is committed merely because he in silence

and without proclamation or complaint recognizes and endures the wrong. Mere silence or passivity on the part of Caroline would not have precluded her from the remedies protective against the effects of the forged instruments. Her silence instigated no action and caused no wrong. A fraudulent purpose or a fraudulent result lies at the basis of the doctrine of equitable estoppel through silence or inaction. Actual or intended fraud is not an element essential to it. Neither affirmative acts or words nor silence maintained with the fraudulent intention of deceiving are indispensable elements of it. But it arises only when, relatively to the party invoking it or his privies, the omission to speak is an actual or constructive fraud. Its existence requires that the party against whom it acts remained silent when he had the opportunity of speaking and when he knew or ought to have known that his silence would be relied upon, and that action would be taken or omitted which his statement of the truth would prevent, and that injury of some nature or in some degree would result. (*Thompson* v. *Simpson*, 128 N. Y. 270; *Collier* v. *Miller*, 137 N. Y. 332.) Caroline had not information or notice that the mortgage was to be given, did not participate in the transaction and committed or omitted no act moving the defendant to enter into it. She could not speak in regard to it. Under the principles we have enunciated, her silence after she first heard of it did not equitably estop her from impeaching it.

The payments of interest by Caroline worked a different result. The transaction of which the forged mortgage was a part created rights and relations between the defendant and Baldwin F. Strauss. The defendant, from the moment the checks it gave Baldwin were paid, might, had it been conscious of the truth, have availed itself of civil remedies for the recovery from him of the $2,000; it might also, by its complaint and information, have subjected him to prosecution criminally. The right

of seeking restoration and payment from the person who accomplished or procured the forgeries was in itself a substantial and valuable one. (*Leather Manufacturers' Bank* v. *Morgan,* 117 U. S. 96; *Continental National Bank* v. *National Bank of the Commonwealth,* 50 N. Y. 575.) Caroline could not by act or declaration diminish or thwart that right and not incur responsibility. The defendant was entitled to have it and the relations between itself and Baldwin F. Strauss remain unaffected by any act or interference on her part. It believed that the apparent lien upon her property created by the mortgage apparently signed and acknowledged by her secured the payment of the $2,000 it had advanced under that belief. She knew such fact and the further fact that her signature was a forgery. The right to foreclose the lien securing the interest, upon a default in its payment, is usual and ordinary, and, it may be presumed, such fact was likewise known to her. We are not required to consider what results an action for the foreclosure of the mortgage, because of a default in the payment of interest due October 1, 1900, would have produced. A reasonable, if not necessary, inference would seem to be that a disclosure of the forgery or a completed foreclosure would be consequent. It is sufficient, however, for the purposes of our review that, if the interest had not been paid, the right to foreclose would have arisen and that she having full knowledge of the facts paid the interest and thus prevented the upspringing of the right and the exercise of it by the defendant. (*Continental Nat. Bank* v. *National Bank of the Commonwealth,* 50 N. Y. 575; *Voorhis* v. *Olmstead,* 66 N. Y. 113.) She by making the payments recognized the mortgage and the lien it seemed to create as real and existing, extended their existence and retarded or intercepted the natural growth and development of the rights and relations between the defendant and her son, and benefited her son and, presumptively, within her contemplation, herself.

She could not be permitted to thereafter repudiate the mortgage. The payments of the interest made by her and their effects, and a subsequent repudiation of the mortgage by her would be inconsistent with each other, would not be responsive to the demands of justice and good conscience and ·would effect a fraudulent result. When a party with full knowledge, or with sufficient notice of his rights and of all the material facts, freely · does what amounts to a recognition or adoption of a contract or transaction as existing, or acts in a manner inconsistent with its repudiation, and so as to affect or interfere with the relations and situation of the parties, he acquiesces in and assents to it and is equitably estopped from impeaching it, although it was originally void or voidable. (*Vohmann* v. *Michel*, 185 N.Y. 420; 2 Pomeroy's Equity Jurisprudence [3d ed.], sections 816–821, 965.)

It is not necessary that an equitable estoppel rest upon a consideration or agreement or legal obligation. The courts apply it, in accordance with established general principles, in order that the transactions and dealings may result justly and fairly with the parties concerned with them; and it operates against an unjust repudiation of a sealed or a forged instrument. It does not require the positive, distinct action or language needed and intended to renew and ratify a transaction and make it valid and binding; it prohibits a person, upon principles of honesty and fair and open dealing, from asserting rights, the enforcement of which would, through his omissions or commissions, work fraud and injustice. It would have prohibited Caroline from maintaining in her lifetime this action, and manifestly the right of the plaintiffs is only that held by her.

The judgment should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., GRAY, HAIGHT, VANN and HISCOCK, JJ., concur; WERNER, J., dissents.

Judgment reversed, etc.