(79 Misc. Rep. 531.)

## APGAR v. CONNELL.

(Supreme Court, Special Term, New York County. February 21, 1913.)

1. WILLS (§ 740*)—FAMILY ARRANGEMENT—EVASION OF WILL.

    The beneficiaries under a will and the heirs of the testator may make. a valid agreement disposing of the property contrary to provisions of the will.

    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1888–1895; Dec. Dig. § 740.*]

2. WILLS (§ 302*)—SUPPRESSION OF WILL—EVIDENCE—"PREPONDERANCE OF EVIDENCE."

    In an action to enforce a trust agreement superseding the testator's will, evidence *held*, in view of the rule that preponderance of evidence does not mean the greater number of witnesses, to show that the will was suppressed, and the testator did not orally declare his wish that all the property should go to the widow.

    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 575, 581, 700–710; Dec. Dig. § 302.*

    For other definitions, see Words and Phrases, vol. 6, pp. 5516–5518.] .

3. PARENT AND CHILD (§ 12*)—DECLARATIONS OF CHILDREN AS AGENTS.

    Where the negotiations for a family settlement superseding a husband's will were left by the widow wholly to her sons, thereby making them her agents, their declarations are binding upon her.

    [Ed. Note.—For other cases, see Parent and Child, Cent. Dig. §§ 141–144; Dec. Dig. § 12.*]

4. TRUSTS (§ 30½*)—CONSTRUCTIVE TRUST—FAMILY ARRANGEMENT.

    Where a widow and the five children who were beneficiaries under the husband's will suppressed it, and entered into an agreement whereby the beneficiaries and a disinherited daughter quitclaimed all the property to the widow, with the understanding that she should hold it for life for the benefit of all the children, an enforceable trust was created and the disinherited daughter was entitled to her pro rata share under the family agreement, for equity favors compromises and family settlements, and the daughter, not a beneficiary, gave up her right to contest the will.

    [Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 41, 41½; Dec. Dig. § 30½.*]

5. TRUSTS (§ 96*)—CONSTRUCTIVE TRUST—BREACH OF. ORAL AGREEMENT.

    Where a family agreement had superseded a will and a disinherited daughter was allowed to take, the mother's sale of the property conveyed to her which by an oral agreement she was to hold for the benefit of all, without notice to the daughter, coupled with retention of the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

proceeds, warrants the intervention of equity to impress an implied trust.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 148; Dec. Dig. § 96.*]

**6. TRUSTS (§§ 17, 18*)—STATUTE OF FRAUDS.**

Where the heirs and beneficiaries of a testator entered into an agreement whereby a disinherited daughter was to take, the mother to hold the property for the benefit of all, the daughter could enforce the trust which was verbal, notwithstanding the statute of frauds.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 15–24; Dec. Dig. §§ 17, 18.*]

**7. TRUSTS (§ 371*)—COMPLAINT—EXAGGERATIONS.**

Where the complaint of a disinherited daughter, who was entitled to take under a family agreement suppressing the will, stated a good cause of action for the impressment of a trust, exaggerated and unsupported statements of fraud in procuring the agreement will be disregarded.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 588–599; Dec. Dig. § 371.*]

**8. WILLS (§ 212*)—AGREEMENT TO SUPPRESS—BINDING EFFECT.**

Where a wife united in a family agreement by which her disinherited daughter was to take with the others, the will being suppressed, she cannot repudiate the arrangement, all the children having quitclaimed the property to her to hold for their benefit.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 519; Dec. Dig. § 212.*]

**9. WILLS (§ 212*)—AGREEMENT TO SUPPRESS—EQUITABLE ESTOPPEL.**

Where those entitled under a will did not object to a family settlement by which a disinherited daughter took for a year after they acknowledged the finding of the will, they are estopped from denying the settlement, though it was made in ignorance of the will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 519; Dec. Dig. § 212.*]

**10. PLEADING (§ 237*)—AMENDMENT TO CONFORM TO PROOF—OBJECTIONS—TIME FOR.**

In an action by a disinherited daughter, where much evidence that a family settlement raised a trust in her behalf was admitted without objection, though the complaint did not aver the trust, plaintiff's motion to conform the pleading to the proof was properly granted, notwithstanding defendant's objection towards the end of the trial that such evidence did not support the allegations of the complaint; the objection not being in time.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 603–619; Dec. Dig. § 237.*]

Action by Mary A. Apgar against Ellen Connell. Judgment for plaintiff.

See, also, 135 N. Y. Supp. 77.

Leander B. Faber, of Jamaica (Albin N. Johnson, of Freeport, of counsel), for plaintiff.

Somerville & Somerville, of Brooklyn (Louis J. Somerville, of Brooklyn, of counsel), for defendant.

GAVEGAN, J. This action was brought originally to set aside three deeds and a general release on the ground of fraud.

The plaintiff is the daughter and the defendant the widow of one

Patrick J. Connell, who died in the city of New York on November 1, 1905, leaving him surviving his widow, the defendant, and six children, namely, the plaintiff and Christopher A. Connell, Joseph F. Connell, John A. Connell, Elizabeth G. Sullivan, and Ellen V. Connell.

On November 5, 1905, letters of administration on the estate of said Patrick J. Connell were granted to the defendant on her petition alleging that diligent search had been made for a will of the deceased, but that none had been found. At the time of his death Patrick J. Connell was the owner of three parcels of real estate in the county of New York, and also of certain personal property. On November 6, 1905, the plaintiff joined with the other children of the deceased in the execution of three deeds conveying the three parcels of real estate before mentioned to the defendant, and also joined in the execution of a general release, whereby said children transferred to the defendant all their right, title, and interest in their father's estate. Thereafter, and prior to the commencement of this action, the defendant conveyed one of the parcels of land to one William S. Silver, and retained and applied the proceeds of the sale to her own use. On November 4, 1909, the plaintiff commenced the present action on a complaint alleging, in substance, that the defendant induced her to sign and acknowledge the deeds and release by false representations, and praying that the instruments be declared null and void and of no effect as against the plaintiff, as to her individual one-sixth part of the real property conveyed, and that the defendant be directed to execute and deliver to the plaintiff a deed reconveying to her said undivided one-sixth interest, subject to defendant's right of dower, and saving the rights of innocent purchasers in any part of said real estate.

The first trial of the action was held on January 13, 1911, and resulted in a judgment in favor of the plaintiff, decreeing that the deeds and general release were fraudulent, null, and void and of no effect as against the plaintiff as to the undivided one-sixth part of the real estate which she had acquired as the heir of her father, and that the plaintiff was entitled both to an accounting of the rents and profits of the two parcels of real estate which had not been sold by the defendant and to her share of the proceeds of the parcel which had been sold to said Silver. Said judgment also directed that the deeds be canceled of record so far as the interest of the plaintiff in the property was concerned. The defendant appealed, and on May 3, 1912, said judgment was reversed and a new trial ordered. Apgar v. Connell, 150 App. Div. 424, 134 N. Y. Supp. 1093.

Almost immediately after the decision on the first trial was announced, the defendant claimed she had discovered a will of the said Patrick J. Connell, in which the plaintiff was cut off with a legacy of $1, and the entire estate of the deceased divided between the defendant and the other children in equal shares. After the reversal of the judgment which took place on May 3, 1912, as above stated, and prior to the new trial, the defendant made no effort to procure leave to amend her answer, or to serve a supplemental answer setting up the discovery of the will, but went to trial for a second time on her original answer admitting that said Patrick J. Connell died intestate.

It was not until the close of the present trial that the defendant sought and obtained leave to amend her answer by setting up the discovery and probate of the will. At the same time the plaintiff was permitted to amend her complaint to conform to the proof by alleging that the purpose and effect of the deeds which the plaintiff had signed was to secure the plaintiff in the ultimate enjoyment of her said share in the estate of the deceased free from any control of her husband, and that the plaintiff, when she signed and acknowledged said deeds, did not understand that the purpose and legal effect thereof was to convey her said share in the estate of the deceased to the defendant absolutely; and that since said deeds were signed by the plaintiff the defendant had claimed to be the absolute owner of the plaintiff's share in the estate of the deceased, under and by virtue of said deeds; and that the will of said deceased was suppressed, and that the defendant knew it was suppressed. Different issues are therefore presented from those contained in the record reviewed by the Appellate Division.

The decision herein must hinge largely upon the determination of two disputed questions of fact antedating the execution of the deeds in question: First, as to whether the will was suppressed, and, second, as to whether certain words, attributed by defendant and her witnesses to Patrick J. Connell immediately before his death were ever in fact uttered by him.

As to the suppression of the will, the evidence shows conclusively that the sons, Joseph and Christopher, both knew that a will disinheriting the plaintiff had been made by their father; and I think there is no reasonable doubt that the defendant herself shared such knowledge. I believe, also, that the defendant and her sons were aware that the will was still in existence at the time of Mr. Connell's death, and knew where to find it. The son Christopher had seen it in his father's safe during the latter's lifetime, had the combination of the safe before his father's death, and had charge of his father's papers. It was from this very safe that he took the old deeds which he sent to the defendant's attorney to enable the latter to prepare the deeds here in controversy. It was in this safe that he found the will on the day after the announcement of the decision adverse to the defendant on the first trial of this action. The very fact that the will was produced with such promptitude when the interests of the defendant seemed to call for its production is sufficient answer to the defendant's contention that she was ignorant of its contents and its whereabouts at the time of the death. While the defendant herself may not have read the will, it is inconceivable that she was not informed as to its contents.

The will was executed on the 4th day of December, 1889, shortly after the happening of conduct on the part of the plaintiff which grieved and justly offended the entire family, and which resulted in her subsequent marriage to her present husband. The terms of said will reflected the father's resentment towards the plaintiff, whose offense he never condoned. This scandal and the desire of the family to conceal it furnish the key to the entire controversy by disclosing the motives which inspired all their acts from the time of the death to the execution of the deeds. In order to avoid a contest and prevent plaintiff's husband from enjoying any share of the property, it was deemed necessary, not only

that the will should be withheld, but also that in some way the property should be placed in the control of the defendant, which could be most readily accomplished by having it appear that the father in his last words had so directed.

As to the alleged last words of the deceased, the defendant and her witnesses testified in substance that, after the attending clergyman had administered the rites of the church to Mr. Connell, he asked him whether he had anything to say, and Mr. Connell thereupon replied that he wished to give all his property to his wife. The same witnesses testify that the plaintiff was present and heard this statement by her father. The plaintiff, on the other hand, denies that she was present in the house at all while the priest was there, and further denies that she ever heard her father make any such statement. Defendant testified that the father would never hear of reconciliation with the plaintiff, never wanted it, never wanted to see plaintiff's children, nor have anything to do with her or them, and there is no convincing evidence that her father ever forgave the plaintiff. If he did so and relieved his conscience before death of the burden which it had carried for sixteen years, any evidence thereof is locked within the secrecy of the confessional. Such evidence, if available, might explain his alleged last words, "I want to leave all my property to my wife." These words standing alone, however, are absolutely inconsistent and irreconcilable, not only with his unchanged attitude and bitter feeling during all those years towards his once wayward daughter, but also with the will he had executed 16 years before disinheriting her and dividing his property as aforesaid. It is not reasonable to believe that this father, who was a successful business man, of moderate intelligence, would expect the plaintiff to calmly relinquish her share of the patrimony, which he must have known would have been necessary in order to leave his wife absolutely the estate which he had already left to her in trust under his will. It is true that this will was made many years before Mr. Connell's death, but the fact remains that he never revoked or altered it, although he was perfectly capable mentally and physically of making another will at any time up to the very day of his death. Nor is there any evidence that he himself requested that a lawyer be sent for on the day of his death. The son Christopher telephoned for a lawyer, but the suggestion that he do so did not come from his father. Furthermore, even the words themselves are not testified to by the only disinterested person who, defendant claims, heard them. I refer to the priest in attendance. He would not be barred from testifying to them, since they were not sealed by any confession, but were spoken, it is claimed, in the presence of the defendant and her entire family; yet, notwithstanding this, the defendant has failed to produce said clergyman as a witness at either trial.

[1] The suppression of the will and the injection into the case of the father's alleged last words are sufficiently accounted for by the erroneous belief that the production of the will would place an obstacle in the way of accomplishing a commendable purpose, namely, the restoration of family peace, and that this purpose would more readily be realized by having it appear that the arrangement to be entered into was in pursuance of the expressed wish of the father. Erroneous

belief, I say, for the reason that all concerned had the indisputable right under the law to ignore the existence of the will and join in an agreement which would supersede it. Bunn v. Bartlett, a General Term opinion reported in 54 Hun, 638, 8 N. Y. Supp. 160.

[2] With some even slight regard, therefore, for the salutary rule that the words "preponderance of the evidence" do not necessarily mean the greater number of witnesses, nor the greater volume of testimony, but refer rather to the quality of the testimony, and having still clearly in mind the impressions received at the trial from seeing and hearing all the witnesses testify, I am impelled to find as facts, first, that the will was suppressed, and, second, that the words attributed to the father on his deathbed relating to the disposition of his property were never uttered by him.

[3, 4] We may now approach the agreement itself which culminated in the execution of the deeds and determine the intention of the parties thereto, as disclosed by the evidence in the case. Plaintiff's mother and brothers and sisters seem to have been on friendly terms with the plaintiff at the time of her father's death, when all were willing and anxious to bury with him the family feud and thereby restore peace and harmony. They all testified that they entertained a friendly feeling towards her at that time. While subsequent developments throw some doubt upon the sincerity of their protestations in this regard, still it is clear that the plaintiff believed that they were friendly to her and was justified in so believing. The attorney who drew the deeds, though evidently not informed as to the true inwardness of the situation, remarked that the family after the father's death were united and of one mind. It appears conclusively from the testimony of the defendant's witnesses that she was not going to take away the plaintiff's share, but merely to keep it away from the plaintiff's husband, and she gave the plaintiff that idea. The understanding of Joseph's wife, who signed with the others, was that the mother should have the property while she lived. There is no need to resort to any inference that the defendant herself took the property upon the understanding that she would hold it for the benefit of her children, including the plaintiff, for by her own testimony she expressly admits that such was the fact.

The defendant testified that she held the property for the benefit of all the children, that when they gave her the deeds she did not ask for nor understand it, and that she left everything pertaining to the signing of the deeds to her sons. Having thus made them her agents, all their acts and declarations up to that time are, of course, imputable to defendant, and their declarations were that everything was for the benefit of all those signing the papers, and that the arrangement was a good thing for the purpose of keeping the family together.

It is significant to note in passing that it was plaintiff's eldest brother, Joseph, who suggested the signing of the deeds in question, and that Christopher and the others present remarked that it was a good idea. I am unable to perceive why the arrangement entered into should be referred to as an idea or suggestion, if it was done as they claim to carry out their father's expressed wish. Nor can I under-

stand why Christopher should say just before the deeds were executed, "Now is the time for any one to object and get his share," meaning, of course, that after they were signed it would be too late to speak for a share to vest immediately, if the arrangement was to be had in pursuance of their father's direction. At that time Christopher's remark could only have had reference to those provided for in the will who were relinquishing something, not to the disinherited plaintiff, who would gain something by joining in the conveyances.

All the children were willing to trust to the conscience of their mother; the plaintiff, because she was to share with the others, the others because in this way they could protect the family name and at the same time continue to exclude the plaintiff's husband from any benefit. The plaintiff likewise trusted and confided in the other members of the family. They were all acting together and the plaintiff was not represented by personal counsel at a most critical time, notwithstanding she was the one for whom the occasion was fraught with the most serious and material consequences. The only other theory which would be at all consistent with the facts is that the defendant really believed her husband died intestate, that she realized the plaintiff would therefore come in for one-sixth share of the estate, and that, in order to effectually exclude plaintiff's husband from any benefit as long as possible, all the others conspired to inveigle the plaintiff, ignorant of the family affairs by long enstrangement to join in the deeds, and thereby give to the defendant the use during her life of the one-sixth share of the estate to the immediate possession of which plaintiff was absolutely entitled in the absence of a will. It is, of course, absurd to suppose that a woman in plaintiff's condition, if entitled to immediate possession of a one-sixth share in a considerable estate, would knowingly and intentionally surrender and relinquish the same forever.

In view of the proof which warrants the conclusion that the defendant and her children were aware of the will and its contents at the time of Mr. Connell's death, and that the motives which influenced the defendant in securing the deeds and release were, first, to avoid a contest of the will by the plaintiff which would reveal to the world an unfortunate family episode, and, second, to withhold from plaintiff's husband as long as possible any benefit from the property, I regard the transaction which culminated in the execution of the deeds and release as a family settlement superseding the will. It may be added that, while the act of the plaintiff in joining in the conveyance in question enabled them at the time to avoid all this, it incidentally resulted in an advantage to the plaintiff in exchange for and in consideration of which she surrendered the valuable right to contest the will, secured to her up to that time under section 2653a of the Code of Civil Procedure. Miler v. Maujer, 82 App. Div. 419, 81 N. Y. Supp. 575.

There is no question but that the intention of the whole family was that of a trust until the defendant sold one of the parcels of property and retained the proceeds thereof without notice to the plaintiff, who thereupon charged her with fraud. There was no fraud used by the defendant as alleged in the complaint to induce plaintiff to sign the release and deeds in question; that is, the defendant made no false

representations which plaintiff believed and acted upon and by which she was deceived and prejudiced. On the contrary, she was benefited by the arrangement. If the plaintiff had established such fraud, she might now be indeed without a remedy, since a judgment affording her relief on that ground would only operate to set aside said instruments and place her in statu quo, which, in view of the existence of the will, though concealed, would be that of a disinherited child. The will, however, having been superseded by the family settlement which plaintiff entered into without fraudulent inducement and without being prejudiced, cannot now be urged by the defendant as a justification for breaching such family agreement. The wrong consisted not in bringing about the agreement, but in breaking it after it was made.

[5] The sale of part of the property and retention of the proceeds thereof by the defendant without notifying the plaintiff was an act of ill faith which constituted such inequitable and unconscientious conduct on the part of the defendant, in view of the advantage she had through the influence of the confidential relations existing between parent and child, as to justify the intervention of a court of equity to prevent the abuse of such confidence by impressing upon the property and its proceeds an implied trust for the benefit of the plaintiff.

[6] The plaintiff would not be precluded from such relief in the absence of a written declaration of trust, even had the statute of frauds been pleaded as a defense, since the whole transaction including the confidential relation of the parties and its nature as a family arrangement brings the case within the principle enunciated by the Court of Appeals in Goldsmith v. Goldsmith, 145 N. Y. 313, 39 N. E. 1067.

[7] Is a party who has exaggerated and misstated his claim thereby precluded from relief when the facts proven would have otherwise entitled him to relief? If it were necessary to establish the plaintiff's claim by her own evidence alone, her injection into the case of these exaggerated allegations might seriously affect her cause, but the facts themselves, without regard to the plaintiff's testimony, are so clear and unmistakable that the allegations referred to may be properly disregarded. It is sometimes difficult to say whether the paucity of decisions on a given question is because the question rarely arises or because of its elementary character. There is a dearth of decisions in this state both on the main question herein of family settlements and the subsidiary question of pleading. The latest utterance on the latter question is found in Callanan v. K. A. C. & L. C. R., 199 N. Y. 268, 92 N. E. 747, which holds that when the complaint alleges both fraud in making a contract and a breach and repudiation thereof as grounds upon which it should be rescinded the allegations of fraud may be rejected and judgment granted upon the allegation of breach and repudiation. Surely some allowance can be made for the plaintiff on this score when we recall her condition in life as the wife of a mechanic earning $2.50 per day when he worked, the testimony of her sister to the effect that the plaintiff told her six months after the agreement that her husband was forcing her to bring suit, and her anxiety for her seven children, with its consequent fears and suspicions which the situation then confronting her would naturally arouse. The allegations of fraud in the plaintiff's complaint may explain, but certainly do not

justify, the attitude of the defendant, nor prevent a court of equity from enforcing a prior trust when it is satisfied that one existed.

[8] It is apparent that as time wore on undisputed possession and enjoyment of the property, in the absence of the plaintiff, engendered in the mind of the defendant a sense of ownership which was encouraged by the absolute terms of the deeds. This feeling of ównership, which found expression in the sale and retention of the proceeds by the defendant of part of the property without consulting or notifying the plaintiff, when coupled with the resentment caused by the plaintiff's charge of fraud, proved stronger than any desire to suppress the family scandal. The conscience of the defendant experienced a revulsion and the trust agreement which superseded the will was .repudiated. Reduced to its simplest form, the question in this case is whether the defendant, having acquired the property in pursuance of a family agreement and upon the understanding that she would hold it for the benefit of all her children, including the plaintiff, can now be heard to repudiate this understanding and claim to be the absolute owner of the property free from any trust. Applying the doctrine of estoppel, I reach the conclusion that she cannot.

[9] Even if the defendant and the plaintiff's brothers and sisters were ignorant of the existence of the will at the time when the deeds and release were executed, they had at all times been aware of its existence since February 14, 1911, when the son, Christopher Connell, claims to have discovered it in the safe, and notwithstanding such knowledge, they have ever since treated the deeds and release as valid and failed to disaffirm them in any way. The acquiescence in the validity of the deeds and release by the defendant and by the plaintiff's brothers and sisters ever since February 14, 1911, is sufficient to preclude them from setting up the will at this time, even though they were not aware of its existence at the time when the deeds and release were signed. In this connection it also appears that on November 8, 1905, the defendant filed an affidavit under the Transfer Tax Law in which the plaintiff was named as one of the persons entitled to a share in the estate of the deceased.

When a party with full knowledge, or with sufficient notice of his rights and of all material facts, freely does what amounts to a recognition or adoption of a contract or transaction as existing, or acts in a manner inconsistent with its repudiation and so as to affect or interfere with the relations of the parties, he acquiesces in and assents to it and is equitably estopped from impeaching it, although it was originally void or voidable. Rothschild v. Title Guarantee & Trust Co., 204 N. Y. 458–464, 97 N. E. 879. "Equity and good conscience would preclude a party from setting up and claiming under a deed which he had voluntarily destroyed and for doing which he had received a full consideration. This principle applies to wills as well as deeds, and, indeed, it cannot admit of doubt that, before probate, the parties in interest would have the right to set aside a will, and such an act would be favored when the object was to avert a family controversy. Phillips v. Phillips, 8 Watts (Pa.) 197, cited in Stringfellow v. Early, 15 Tex. Civ. App. 597 [40 S. W. 871]."

It is well established that family compromises are favored in equity,

and may be sustained by the court "albeit, perhaps, resting upon grounds which would not have been considered satisfactory if the transaction had occurred between strangers." Bispham's Principles of Equity (8th Ed.) § 189, and cases cited thereunder.

A leading case relating to family agreements—Stapilton v. Stapilton, 1 Atk. 2, reported also in White & Tudor's Leading Cases in Equity (6th Ed.) at page 920—holds that:

"An agreement entered into upon a supposition of a right, or of a doubtful right, though it after comes out that the right was on the other side, shall be binding, and the right shall not prevail against the agreement of the parties; for the right must always be on one side or the other, and therefore the compromise of a doubtful right is a sufficient foundation of an agreement. Where the agreements were entered into to save the honor of a family and are reasonable ones, a court of equity will, if possible, decree a performance of them."

And in the American notes at the end of the case at page 959 the doctrine is thus summed up:

"Family agreements are governed by a special equity of their own, and may be enforced, if they are honestly made, although they have not been meant as compromises of doubts, but have proceeded on an error of all parties, originating in ignorance or mistake of facts as to what their rights actually are. In cases of family arrangements the question of consideration is not carefully regarded by the court, and an arrangement when made, although there were no rights in dispute at the time of making it, will be upheld by the court, which will not scan with much nicety the quantum of consideration."

These principles have been adhered to in this country. Appeal of Wilen, 105 Pa. 121; Bunn v. Bartlett, supra; Phillips v. Phillips, supra; Stringfellow v. Early, supra. See, also, 1 Story's Equity Jurisprudence (13th Ed.) § 132.

The defendant seems to have acted conscientiously at the time she acquired legal title to the property involved, testifying without reserve to the intention which she then had in mind, and no doubt she now believes that the plaintiff, as all her other children, should be content, and if not content compelled, to rely on the dictates of the maternal conscience. It is against public policy, of course, to allow the substitution of an individual's conscience, enlightened or unenlightened as the case may be, for the law of the land. To do so would be equivalent to substituting one's personal notion of justice for justice under the law.

As to plaintiff's brothers and sisters, they have avowedly conveyed all their right, title, and interest in the estate to the defendant. They have not disaffirmed such conveyance, and by their testimony they have precluded themselves from attacking it at any time in the future. As they no longer have any interest in the property left by their father, it is immaterial to them, from a legal point of view, whether the deeds and release are determined to be absolute conveyances or a trust is declared in favor of the plaintiff. The court has power to prevent the defendant from taking any advantage under the will against the plaintiff if such advantage would be inequitable and operate as a fraud upon the plaintiff. Upon the whole transaction, therefore, including the confidential relation of the parties and its nature as a family arrangement

very much beyond a business relation, I think it is competent for a court of equity to impress upon the property and its proceeds an implied trust for the benefit of the plaintiff.

[10] In reaching this conclusion, I am not unmindful of the fact that the complaint contained no allegation of trust or conveyance for life until it was amended to conform to the proof on plaintiff's motion at the end of the case. It will be observed, however, that a great deal of evidence tending to prove the existence of a trust had been admitted without objection before the defendant towards the end of the testimony raised the specific objection that said evidence did not tend to support the allegations of the pleadings, although the court had called attention to the fact and given defendant ample opportunity to make objections at the time the testimony was introduced. Furthermore, the evidence in question relating solely as it did to the intention and understanding of the defendant and her children other than the plaintiff at and prior to the execution of the deeds can hardly be claimed as cause for surprise, since it must have been all in their minds at that time. The rule that the pleadings cannot be conformed to the proof where there is an objection taken to the sufficiency of the pleadings which set forth the cause of action applies only where the objection is taken "in due time," as was held in Rutty v. Consolidated Fruit Jar Co., 52 Hun, 492, at page 494, 6 N. Y. Supp. 23, which was an action at law. Certainly no stricter application of the rule should be enforced in this case in equity where the defendant during a period of six months after the reversal of the judgment in the first trial has made no effort to procure leave to amend her answer by setting up the discovery of the will, and comes to trial for a second time on her original answer admitting that Patrick J. Connell died intestate. Had the defendant not waived the objection by failing to raise it in due time, the parties would have been relegated to Special Term, there to amend the pleadings so as to meet the issues referred to. Finally, the defendant was also permitted to amend her answer by pleading a separate defense and introducing new evidence, namely, the will of Patrick J. Connell, which she claimed was found after the judgment in a former trial. I fail to see, therefore, how the defendant had been in any manner prejudiced.

Judgment for the plaintiff impressing a trust on the property the legal title to which is in the defendant to the extent of one-sixth of its value, subject to the life estate of the defendant, and also on the proceeds of the sale of the parcel of real property previously alienated by defendant to the extent of one-sixth thereof. If the defendant does not stipulate the amount of the plaintiff's interest in the proceeds of the sale of the parcel last mentioned, a referee will be appointed to determine the amount thereof.

Present findings in accordance with opinion on notice.