JULIETTE HARRIS, Respondent, *v.* HERMAN RAMAN, Appellant, Impleaded with WILLIAM WEISGERBER and Another, Defendants.

Second Department, March 1, 1929.

*Charles Berlin*, for the appellant.

*Manton Marks* [*William H. Freedman* with him on the brief], for the respondent.

YOUNG, J.   The action is brought to foreclose a mortgage covering property situate in Brooklyn, N. Y.   Neither of the defendants Weisgerber answered.

The mortgage in question was executed April 1, 1904, by the appellant to Conrad Weisgerber and Mary, his wife, for $13,000, but, prior to the commencement of this action, it had been reduced to $6,000.   In 1917 Conrad Weisgerber died, and his widow, Mary,

was named as executrix and sole beneficiary under his will. On February 14, 1920, she was over seventy-six years of age and unable to read or write except her name. She was induced by her grandson, the defendant William Weisgerber, to transfer to him her entire estate, including the bond and mortgage in suit. The aggregate value of such estate was approximately $32,000. She subsequently brought an action to set aside all of these transfers. In June, 1920, and after a partial trial, a decree was entered by consent, by which all the assets of the estate, including the bond and mortgage in question, were transferred to the Hamilton Trust Company (now the Chase National Bank), in trust, for the benefit of Mary Weisgerber during her life, to pay the interest and income thereof to her, and, upon her death, to deliver to William and Lewis Weisgerber, brothers, all of the bonds and mortgages then remaining in its hands, together with any new investments which might have been made. By this decree, William and Lewis Weisgerber became entitled to equal shares in the remainder of this fund upon the death of Mary Weisgerber.

In April, 1924, and during the life of his grandmother, Lewis Weisgerber sold to Manton Marks, the plaintiff's attorney, an undivided one-fifth of his share in said trust fund, and executed an assignment thereof which recited that the value of that fund was approximately $33,000. Annexed thereto was a schedule of securities held by the trustee, which included the mortgage in question. He also made an affidavit, at the same time, in which he stated that he had never at any time assigned, aliened or incumbered his interest in the trust fund, and that, subject to Mary Weisgerber's interest, he was the absolute owner thereof, and that his interest was worth not less than $16,000.

In April, 1925, he sold a second undivided one-fifth of his share in the trust fund to Marks and made a similar affidavit as to absolute ownership. In November, 1925, he sold a third one-fifth to plaintiff under a similar assignment, and made a similar affidavit as to his ownership.

Mary Weisgerber, the grandmother, died June 2, 1926, and on July sixth of that year Lewis Weisgerber began an action in the Supreme Court, Kings county, against the bank and the assignees to set aside the alleged assignments for usury, alleging in his complaint that he owned one-half of said trust fund, amounting to $16,500. That action was dismissed for failure of prosecution, and judgment entered June 14, 1927. Ten days later he began another action against the Chase National Bank, in which the assignees were made parties defendant, to compel an accounting by the bank as trustee. He did not make the appellant nor his brother William

parties to that action. The bank interposed an answer to which is attached its account. In December, 1927, the case was settled, and a stipulation was entered into, which provided, among other things, that the bank in distributing the funds to the parties entitled thereto should give effect to the assignments executed by Lewis Weisgerber; should pay to Juliette Harris (the plaintiff in this action) three-fifths of the cash held by it to the credit of Lewis Weisgerber, and should assign the Raman mortgage by separate assignments as follows: One-half to William Weisgerber, two tenths to Lewis Weisgerber, and three-tenths to Juliette Harris. A decree was thereupon entered on December 7, 1927, and thereafter the bank made the payments to this plaintiff and the assignment of the bond and mortgage to her in accordance with the decree. This assignment contained a clause to the effect that it " is without recourse as against the assignor."

At the time of the settlement of the action brought by Mary Weisgerber against William, there were certain legal expenses in connection with the suit, and the appellant, who had been a friend of the Weisgerbers for years, advanced to William and Lewis $6,000. This amount was disbursed by William for these expenses. At that time, and before any of the above assignments by Lewis Weisgerber had been made, an agreement was made between the appellant and William and Lewis Weisgerber which is as follows:

" BROOKLYN, N. Y., *September* 25, 1920.

" Agreement between Herman Raman, party of the first part, and William Weisgerber, party of the second part.

" The party of the second part hereby acknowledges that there is due the party of the first part the sum of six thousand and no/100 dollars and agrees and promises to pay to the party of the first part upon the death of Mary Weisgerber, Grandmother of the party of the second part the sum of Six Thousand and no/100 Dollars, said payment to be used in the satisfaction of the bond and mortgage for Thirteen Thousand and no/100 Dollars, on property 160 Throop Avenue, in the Borough of Brooklyn, City of New York, and on which there is now due and unpaid the sum of Six Thousand and no/100 Dollars. The party of the first part hereby agrees to accept payment of the aforesaid amount, namely, Six Thousand and no/100 Dollars, as stipulated in this agreement and will not attempt to collect this sum in any other manner than as stated in the within agreement.

" Lewis Weisgerber, party of the Third Part, hereby agrees to the aforesaid agreement in its entirety.

" This agreement covers all other notes or debts to date of this agreement."

It is claimed by the appellant that, by reason of the payment of this $6,000 and the agreement above quoted, the mortgage sought to be foreclosed was paid and satisfied. But, notwithstanding this payment and the above agreement, the appellant paid interest on the bond and mortgage in question to the trustee up to and including that due July 1, 1927, although Mary Weisgerber had died prior thereto and on June 2, 1926, and during this period the rate of interest had been increased from five and one-half per cent to six per cent without any objection on the part of the appellant. This agreement was found by the trial court to have been made. There is testimony to the effect that, at the time of the first assignment by Lewis Weisgerber to Marks of a share in the estate, the latter was informed of the agreement, and that he was further informed at the time of the settlement of the accounting action that there was a defense to this mortgage. He does not deny this testimony.

The trial court directed judgment for the plaintiff for the foreclosure of the mortgage, and from that judgment this appeal is taken.

The question presented is whether this payment of $6,000 by appellant to the Weisgerbers, and the agreement made by them concerning it, had the effect of discharging the bond and mortgage in question. At the time of that payment and the agreement, the Weisgerbers, not holding the legal title to the bond and mortgage, were in no position to execute or deliver a satisfaction piece; but it would be binding upon them when they acquired such legal title thereto upon the death of their grandmother. They then became vested with the legal title and could satisfy the mortgage. This, however, was not done, and appellant continued to make payments of interest on the mortgage, even at an increased rate of interest, without any objection and without asserting any defense of payment. The making of the agreement is established by the finding of the trial court. While there is no finding as to the payment by appellant to the Weisgerbers of $6,000, it is nowhere denied, and there is no contention on the part of the respondent that it was not made.

Appellant invokes the familiar principle that the assignee of a chose in action takes it subject to all equities and defenses existing thereto. He also claims that plaintiff took the assignment of the mortgage with notice of this defense. On the other hand, the respondent contends that appellant acquired no equities in the mortgage by his agreement; that, at the time of the agreement, neither of the Weisgerbers held legal title to the mortgage, and could, therefore, make no agreement concerning it which would bind the bank, the holder of the legal title; that, at that time, the bank

could have assigned the mortgage to a third person, who would have obtained good title, or it could have insisted that appellant pay the mortgage irrespective of the agreement in question. All this is quite true, but it is equally true that the assignments made by Lewis Weisgerber of three-fifths of his interest in the estate, including the mortgage in question, were subject to the same power in the bank to assign the mortgage to third parties. In other words, so far as the mortgage itself was concerned, neither the agreement between appellant and the Weisgerbers, nor the assignments made by Lewis through which plaintiff claims, had any legal effect upon the mortgage itself. Both contemplated that they could only be effective when the estate in remainder vested in the two brothers upon the death of their grandmother.

Respondent, in her brief, seems to concede that the existence of the agreement was known to the bank and to Marks, plaintiff's attorney, in December, 1927. Indeed, Marks did not contradict it nor that he was told by Lewis Weisgerber of the agreement at the time of the first assignment, although he was called as a witness for defendant. This knowledge on the part of the bank probably led to the clause in the assignment making it without recourse to the bank.

It remains to consider whether the payments made by appellant for interest long after Mary Weisgerber's death, when the Weisgerber brothers were in a position to make the agreement effective and to satisfy the bond and mortgage, had the effect of creating an estoppel against appellant to assert payment and satisfaction of the mortgage.

In support of such estoppel respondent cites *Rothschild* v. *Title Guarantee & Trust Co.* (204 N. Y. 458). In that case a mortgage purported on its face to have been executed by Caroline Strauss and her husband to defendant to secure the payment of $2,000 and to mature November 6, 1902, with interest semi-annually. Caroline did not execute the mortgage and was wholly ignorant thereof. Her name thereon was forged by Baldwin F. Strauss, her son, who received the $2,000 paid by defendant in two checks to the order of Caroline Strauss and Baldwin F. Strauss. About a year after the making of the loan, Caroline acquired full knowledge that it had been made upon the security of the instruments and that her signature had been forged by her son, and, with such knowledge, she caused to be paid to defendant, out of her own moneys, interest upon the mortgage as it became due. She died on December 21, 1903, and, soon after, the defendant acquired its first knowledge or notice of the forgeries, and refused, upon demand of the plaintiffs, to surrender the mortgage. After Baldwin F. Strauss' disappearance,

defendant made diligent search and inquiry for him and learned that he had left the State, but was unable to discover his whereabouts or whether he was alive. It was held that, when Caroline Strauss acquired full knowledge of the facts, the right of action to compel defendant to discharge the mortgage was vested in her; that she did not lose this right or protection by her silence, but that the payments of interest by her thereafter worked a different result; that defendant, from the moment the checks it gave Baldwin were paid, might, had it been conscious of the truth, have availed itself of civil remedies for the recovery from him of the $2,000, and might also, by its complaint and information, have subjected him to prosecution criminally; that the right of seeking restoration and payment from the person who accomplished or procured the forgeries was in itself a substantial and valuable one, and that Caroline could not, by act or declaration, diminish or thwart that right and not incur responsibility; that she, by making the payments, recognized as real and existing the mortgage and the lien it seemed to create, extended their existence and retarded or intercepted the natural growth and development of the rights and relations between the defendant and her son and benefited him and, presumptively, herself; that she could not be permitted thereafter to repudiate the mortgage; that when a party, with full knowledge or with sufficient notice of his rights and of all the material facts, freely does what amounts to a recognition or adoption of a contract or transaction as existing, or acts in a manner inconsistent with its repudiation and so as to affect or interfere with the relations and situation of the parties, he acquiesces in and assents to it, and is equitably estopped from impeaching it, although it was originally void or voidable.

The case cited is, in my opinion, distinguishable from that at bar in its facts. In that case, the payments of interest and the consequent recognition of the forged mortgage were made to the party directly affected by such payments, who was misled thereby to its prejudice. In the case at bar, however, the payments of interest were not made either to plaintiff or Marks as assignees of the mortgage, or of Lewis Weisgerber's interest therein, and there is no evidence and there can be no pretense that they were misled thereby to their prejudice. There is no evidence that they had any knowledge of these payments of interest, nor is there any pretense that any inquiry was made of appellant or that he stood by and saw plaintiff and Marks part with their money on the faith of the validity of the mortgage; nor is there any evidence that appellant had any knowledge that the assignments were being made by Lewis.

The explanation of appellant's payments of interest may be that, as long as Mary Weisgerber lived, no payment by him to the Weisgerber brothers would be effective to satisfy the mortgage. Until her death, therefore, he was obliged to pay interest or run the risk of foreclosure, for, of course, the bank, as trustee, could not and would not recognize a payment in satisfaction of the mortgage to the Weisgerbers. For the same reason, he could have made no valid objection to the payment of ·increased interest. It should be observed that he ceased paying interest after the decree in the accounting action in December, 1927. Until that time, and while the bank as trustee still held the legal title, he may perhaps have erroneously believed that he was obliged to pay interest. But these payments misled or prejudiced no one; not the bank, because when it assigned the mortgage to plaintiff it had knowledge of the defense and protected itself by making the assignment without recourse; not Marks or plaintiff, because they had knowledge of the agreement and could have taken any procedure necessary to pursue Lewis Weisgerber for his fraud. In my opinion, therefore, the plaintiff, by taking an assignment of Lewis Weisgerber's interest in the estate, and by taking an assignment of an interest in the mortgage without inquiry of the appellant as to any defenses thereto, took them subject to any equities or defenses which the appellant had, and that the appellant is not estopped to assert his defense of payment and satisfaction under the agreement with the Weisgerber brothers.

The judgment should be reversed upon the law and the facts, with costs, and judgment directed in favor of the ·appellant dismissing the complaint, with costs. Findings of fact and conclusions of law inconsistent herewith should be reversed and new findings and conclusions made.

LAZANSKY, P. J., KAPPER, SEEGER and CARSWELL, JJ., concur.

Judgment reversed upon the law and the facts, with costs, and judgment directed in favor of appellant dismissing the complaint, ·with costs. Findings of fact and conclusions of law inconsistent herewith are reversed and new findings and conclusions will be made. Settle order on notice.