THEODORE WIDMER, PLAINTIFF-RESPONDENT, v. TOWNSHIP OF MAHWAH, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued April 26, 1977—Decided June 28, 1977.

Before Judges LYNCH, MILMED and ANTELL.

*Mr. E. Carter Corriston* argued the cause for appellant (*Messrs. Breslin & Breslin,* attorneys).

*Mr. Albert L. Cohn* argued the cause for respondent (*Messrs. Cohn & Lifland,* attorneys; *Mr. Daniel Crystal* on the brief).

The opinion of the court was delivered by

ANTELL, J. A. D. Defendant Township of Mahwah appeals from a judgment entered in favor of plaintiff. That

judgment entitled plaintiff, a member of the Mahwah Police Department, "to receive credit, pay status, seniority determination, back pay differential, determination of vacation and pay benefits, and etc., with defendant by virtue of his prior employment with the Hawthorne Police Department."

Plaintiff had been employed as a patrolman by the Hawthorne Police Department in Passaic County from May 31, 1967 until May 31, 1974. On June 1, 1974 he voluntarily transferred to the Mahwah Police Department in Bergen County. As plaintiff himself said, he understood when hired that he "would start fresh, right at the bottom." He also testified that he could not deny the emphatic testimony given by the mayor of Mahwah and the chief of police that they told him he was not being hired as a "lateral transfer," that his previous time in the service of Hawthorne would not be credited him for purposes of longevity and seniority, and that his starting salary as a probationary patrolman would be $8,500, $3,400 less than the pay he was receiving in Hawthorne. He also knew that the maximum salary in Mahwah was about $1,000 higher than the same level in Hawthorne.

After completing his probationary period and after receiving his permanent employment, plaintiff learned for the first time of the benefits provided by *N. J. S. A.* 40A:9–5 when in June or July 1975, he read a newspaper article reporting the decision in *Caldwell v. Rochelle Park Tp.,* 135 *N. J. Super.* 66 (Law Div. 1975). *Caldwell* held that, pursuant to *N. J. S. A.* 40A:9–5, when a police officer transfers from employment in one municipality to employment in another municipality in the same county, he is entitled to credit for the prior service in the first municipality for all purposes. It was then that plaintiff decided to disaffirm the commitment he had made and demanded additional longevity, vacation pay, pay status, back pay differential, seniority and other emoluments based upon a period of service calculated from May 1, 1967, the date he began his service with Hawthorne. When these demands were rejected he instituted this action in lieu of prerogative writs. As a result of the judgment

below, plaintiff now enjoys wage benefits, longevity status and a position in the Mahwah Police Department superior to other officers who have been there longer than he.

Mahwah contends on appeal that (1) *N. J. S. A.* 40A:9–5 does not provide for lateral transfers between municipalities of different counties and (2) plaintiff had actual or constructive knowledge of his rights under *N. J. S. A.* 40A:9–5 upon a lateral transfer and he intentionally relinquished these when he voluntarily bargained away his claim for longevity benefits.

*N. J. S. A.* 40A:9–5, rights of certain employees transferred to other positions, effective July 1, 1971, provides:

> Whenever heretofore or hereafter a transfer has been or shall be effected by appointment, assignment or promotion of a municipal employee to any other department or position in municipal employment, or to a position or department of the county government; or of a county employee to any other position or department in county employment, or to a department or position of a municipal government, in counties of the first or second class, the period of such prior service in said county or municipal employment, for any purpose whatsoever, shall be computed as if the whole period of employment of such employee had been in the service of the department, or in the position, to which the said employee had been transferred.

After the enactment of *N. J. S. A.* 40A:9–5 this court in *Libby v. Union Cty. Bd. of Freeholders,* 125 *N. J. Super.* 471 (App. Div. 1973), held that the statute entitles employees who voluntarily transferred from municipal employment to county employment in the same county to longevity pay. In *Fivehouse v. Passaic Valley Water Comm'n,* 127 *N. J. Super.* 451 (App. Div.), certif. den. 65 *N. J.* 565 (1974), and in *Gudgeon v. Ocean Cty.,* 135 *N. J. Super.* 13 (App. Div. 1975), this court iterated the view that *N. J. S. A.* 40A: 9–5 contemplated voluntary transfers. However, in both *Fivehouse* and *Gudgeon,* the respective plaintiffs fell outside of the scope of *N. J. S. A.* 40A:9–5 for other reasons. Recently the Law Division in *Caldwell v. Rochelle Park Tp., supra,* held that *N. J. S. A.* 40A:9–5 allowed the vol-

untary lateral transfer of a police officer between municipalities of the same county with credit.

■ None of the cases mentioned above considered the question whether *N. J. S. A.* 40A:9–5 applies to voluntary transfers between municipalities of different counties. The benefits of the statute are broadly conferred upon municipal employees who are transferred "to any other department or position in municipal employment." Nothing elsewhere in the statute even suggests that the locations of the municipalities involved are to play any part in determining whether its terms are to apply. Further, this court in *Gudgeon* implicitly recognized that *N. J. S. A.* 40A:9–5 contemplated voluntary transfers between county positions of different counties as long as the counties involved are of the first or second class. Accordingly, we hold that *N. J. S. A.* 40A:9–5 applies to transfers between municipal positions of different counties.

■ ■ As to the waiver issue, the principle is well established that every person is conclusively presumed to know the law, statutory and otherwise. *In re Mild*, 25 *N. J.* 467, 485 (1957); *Gibraltar Factors Corp. v. Slapo*, 41 *N. J. Super.* 381, 384 (App. Div. 1956), aff'd 23 *N. J.* 459 (1957); *Newark v. Yeskel*, 6 *N. J. Super.* 434, 443 (Ch. Div. 1949), aff'd 5 *N. J.* 313 (1950), *Szczesny v. Vasquez*, 71 *N. J. Super.* 347, 358 (App. Div. 1962); *Russo v. Forrest*, 52 *N. J. Super.* 233, 239 (App. Div. 1958), and that parties are "presumed to have contracted with reference to the existing law," *Silverstein v. Keane*, 19 *N. J.* 1, 13 (1955); *Gibraltar Factors Corp., supra* 41 *N. J. Super.* at 384. The statute involved here does not embrace considerations of public policy which might raise a question of whether the rights may be waived. *Cf. McCarthy v. Nat'l Ass'n for Stock Car Auto Racing, etc.*, 87 *N. J. Super.* 442, 449 (Law Div. 1965), aff'd 90 *N. J. Super.* 574, aff'd 48 *N. J.* 539, 543 (1967). Under the circumstances of this case it must be assumed that plaintiff was fully capable of waiving a right which he is conclusively presumed to know. To

say that the clear language used here by which the plaintiff accepted this employment does not suffice as a waiver would require that plaintiff be shown to have had actual knowledge of the specific statute. As a precedent this would place an intolerable burden on every contracting party to insure that the other party is fully informed of all enactments which may create rights impliedly excluded by the contractual terms which they agree upon.

▮ At the time of negotiating this employment agreement plaintiff possessed the right to transfer credit for previous service in the event he was hired. But he had no right to be hired; this was made the subject of negotiation, and the hiring was attended by clearly specified terms and conditions which he accepted, *i. e.,* that credit for his previous employment would not be allowed. Hence, there is no reason why plaintiff should be permitted to enjoy these benefits now, regardless of whether he knew or did not know of the statute at the time.

If, at the time of applying for the position, plaintiff actually knew of the statute, two options were open to him: either to forego the rights therein created or to insist upon them. If he chose the latter, he would not have been hired. In choosing, as he did, the former, he was hired, but without credit for prior employment time. Neither alternative permitted the benefit he received from the judgment under review.

▮ ▮ Finally, if a right to transfer employment credits did somehow arise in favor of plaintiff, considerations of conscience and fair dealing require that he be equitably estopped from asserting such right.

In modern usage, equitable estoppel and estoppel *in pais* are convertible terms, embracing also *quasi*-estoppel. They embody the doctrine, grounded in equity and justice, that one shall not be permitted to repudiate an act done or position assumed where that course would work injustice to another who, having the right to do so, has relied thereon. An estoppel arises "where a man is concluded and forbidden by law to speak against his own act or deed; yea, even though it is to say the truth." *Termes de la Ley, tit.*

*"Estoppel,"* cited in *Demarest v. Hopper,* 22 *N. J. L.* 599, 619. It is operative where a person "has done some act which the policy of the law will not permit him to gainsay or deny." 1 *Greenl. Evid.* (*16th ed.*) *ch.* VI, § 22. See also, *Blk. Com.* 308. While the creature of equity, and governed by equitable principles, it is a doctrine enforceable in courts of common law jurisdiction. *La Rosa v. Nichols,* 92 *N. J. L.* 375; *Central Railroad Co. v. MacCartney,* 68 *N. J. L.* 165. It is of the essence of equitable estoppel that one is precluded from taking a position inconsistent with that previously assumed and intended to influence the conduct of another, if such repudiation "would not be responsive to the demands of justice and good conscience," in that it would effect an unjust result as regards the latter. *Rothschild v. Title Guarantee and Trust Co.,* 204 *N. Y.* 458, 97 *N. E.* 879, 41 *L. R. A.* (N. S.) 740. [*N. J. Suburban Water Co. v. Harrison,* 122 *N. J. L.* 189, 194 (E. & A 1939)]

Also see, *Anske v. Palisades Park,* 139 *N. J. Super.* 342, 348 (App. Div. 1976); *Flammia v. Maller,* 66 *N. J. Super.* 440, 448–449 (App. Div. 1961); *Goodpasture v. Goodpasture,* 115 *N. J. Super.* 189, 197 (Ch. Div. 1971). An estoppel does not require that a fraudulent intent be shown. "If the conduct works an unjust or inequitable result to the person it was designed to influence, the doctrine is applicable." *N. J. Suburban Water Co. v. Harrison, supra* 122 *N. J. L.* at 196; 28 *Am. Jur.* 2d, *Estoppel and Waiver* § 41 at 648.

Plaintiff applied for a position in the Mahwah Police Department. He understood that if hired it would be as a newcomer. The Township relied upon his unequivocal assent to these terms. After receiving a permanent appointment after a one year probationary period he discovered a statute enacted four years earlier which made provision for the very rights he agreed not to claim in order to be hired. He thereupon renounced his agreement, demanded that the township meet unbudgeted expenses, and sought a position senior to older members of the department notwithstanding the adverse impact upon department morale which this must have. Under these circumstances the doctrine of estoppel is clearly applicable.

Reversed.