### In re IRVINE.

(District Court, W. D. South Carolina. January, 1919.)

BANKRUPTCY &—264—LANDS OF ESTATE—SALE WITHOUT APPRAISAL.

    Sale by trustees in South Carolina of land of a deceased bankrupt, whose estate was solvent, would not be confirmed on objection by his heirs, where the land, located in Kentucky, was not appraised, and was described in the advertisement only as bankrupt's one-third interest "in those two tracts or parcels of land in Edmundson county, Kentucky, containing 190 acres and 225, acres, respectively."

In Bankruptcy. In the matter of W. H. Irvine, bankrupt. On rule to require trustees to execute deed to land sold by them. Rule discharged.

Martin & Blythe and L. K. Clyde, all of Greenville, S. C., for petitioner.

Haynsworth & Haynsworth and Townes & Earle, all of Greenville, S. C., for trustees.

Cothran, Dean & Cothran, of Greenville, S. C., for heirs.

JOHNSON, District Judge. A statement of the facts will aid in a clear understanding of the matter now before the court for decision. W. H. Irvine was by this court adjudged a voluntary bankrupt. Shortly thereafter Irvine died intestate. The administration of the estate went forward as provided by section 8 of the Bankrupt Law (Act July 1, 1898, c. 541, 30 Stat. 549 [Comp. St. § 9592]). On January 14, 1918, by order of the referee in bankruptcy to whom the case had been referred, the trustees offered for public sale at Greenville, S. C., numerous parcels of real estate. That involved in this controversy was described in the advertisement as follows:

"Tract No. 33. The one-third interest of W. H. Irvine, bankrupt, in those two tracts or parcels of land in Edmundson county, Kentucky, containing 190 acres and 225 acres, respectively."

The interest of said bankrupt in the said two tracts of land was bid off by A. G. New for $1,000; he being at that price the highest bid-

der therefor. New was ready and willing, and offered, to comply with the terms of his bid, and he states that he is still ready, and has always been ready. Objection was made to the making of the deed by the members of the bankrupt's family. John J. McSwain, the then referee in bankruptcy, did not order the deed to be made, nor did he ever formally decide the case one way or the other. The present referee in bankruptcy, W. C. Cothran, Esq., having been attorney for the bankrupt and his family, felt a delicacy in passing upon the question, and hence it came before the court upon the petition of A. G. New for a rule against the trustees to show cause why they should not execute to him a deed of the land hereinbefore referred to. The trustees make a formal return, setting forth that the estate is not insolvent, that the creditors will receive their money in full, and that the real parties in interest are the heirs at law of the bankrupt, and they are willing to obey whatever orders this court may make in the premises. The heirs at law of the bankrupt object to the confirmation of the sale on three grounds: First, that the price at which the land was bid off is utterly inadequate; second, that they were honestly mistaken as to the day of sale, and neither attended the sale, nor did their attorney attend it for them; third, that the property had not been appraised.

Section 8 of the Bankruptcy Act (Comp. St. § 9592) provides:

"The death * * * of a bankrupt shall not abate the proceedings, but the same shall be conducted and concluded in the same manner, so far as possible, as though he had not died * * * provided, that in case of death the widow or children shall be entitled to all rights of dower and allowance fixed by the laws of the state of the bankrupt's residence."

This court, therefore, is not only acting in the capacity of a bankrupt court in administering and paying the debts of the deceased, but so far as the surplus funds are concerned it must act in exactly the same capacity as a probate court. The heirs at law in this controversy are the real parties in interest.

The policy of all courts is to sustain judicial sales. Mere inadequacy of price, unless it be so great as to shock the conscience, is no justification for the court to refuse to confirm a judicial sale. If there were nothing more before this court than the mere fact that the land was bid off for $1,000, and two other people are willing to give $1,500 for it, the court would not hesitate to confirm the sale. The heirs at law do not make any sufficient showing before the court as to how or why they were mistaken about the time of the sale, and the court cannot refuse to confirm the sale on the ground of honest mistake on their part. On the third ground, that the property was not appraised, coupled with some other circumstances in the case, the court feels constrained to refuse confirmation. Subdivision "b" of section 70 of the Bankruptcy Act (Comp. St. § 9654) provides:

"All real and personal property belonging to bankrupt estates shall be appraised by three disinterested appraisers; they shall be appointed by, and report to, the court. Real and personal property shall, when practicable, be sold subject to the approval of the court; it shall not be sold otherwise than subject to the approval of the court for less than seventy-five per centum of its appraised value."

The lands in Kentucky bid off by the petitioner have never been appraised as required by law. The advertisement, quoted above, was wholly inadequate to apprise the public of what was being sold. The inadequacy of the advertisement and the failure to appraise might not present such serious difficulties, if the property sold had been known to the community where the sale was made. In this case lands lying in Kentucky are exposed to sale at Greenville, S. C. (James L. Killian, the Perry estate, and the bankrupt estate of W. H. Irvine each owned a one-third interest in fee in a tract of 196 acres of land in Edmundson county, Ky. They owned in the same proportion the mineral rights in a tract of 225 acres of land.) There is nothing in the advertisement to indicate the character of the land, or what kind of minerals the land is underlaid with. It was stated to the court in the argument that the minerals are asphalt and coal. The value of coal lands may depend largely upon transportation. There is nothing in the advertisement to indicate how far the land is from a railroad or from a navigable stream, nor is there any statement of any geologist or mining engineer as to the quantity and quality of the asphalt and coal underlying said land. Nor are we apprised by the advertisement whether the surface of the land was desirable for farming purposes or for timber purposes.

The trustees, before selling this land, should secure the names of three reliable and responsible persons in the vicinity in which it lies to appraise it, and in their next advertisement they should state where the land lies, whether it is desirable for farming purposes or timber purposes, what kinds of minerals underlie it, and the supposed quality and quantity, together with the accessibility of the land to railroad or water transportation, so that the public may be apprised by the advertisement and by a previous appraisement of what is offered for sale, and the court would then know what had been sold, and what proportion the purchase price bore to what appraisers who knew the property had sworn that it was worth. For the reasons herein stated, the court cannot confirm the sale made on the 14th day of January, 1918.

Wherefore it is ordered that the rule be discharged. It is further ordered that the heirs at law or the trustees may apply at the foot of this order for any further orders that may be necessary and proper in the administration of this estate.