## In re LAKE CHAMPLAIN PULP & PAPER CORPORATION.

District Court, N. D. New York. June 29, 1927.

**1. Bankruptcy ⊂⊃22—General Orders of Supreme Court, and District Court rules, have effect of statutes (Bankruptcy Act, § 30 [Comp. St. § 9614]).**

General Orders in Bankruptcy, adopted by the Supreme Court, pursuant to Bankruptcy Act, § 30 (Comp. St. § 9614), and District Court rules, not in conflict with statute or General Orders, have the effect of statutes.

**2. Bankruptcy ⊂⊃261—Sale of bankrupt estate, without complying with rule that sale shall be at public auction, pursuant to published notice, held invalid (General Order No. 18; Bankruptcy Act, § 30 [Comp. St. § 9614]; District Court rule 14).**

Sale of bankrupt estate, without compliance with General Order No. 18, adopted by Supreme Court, pursuant to Bankruptcy Act, § 30 (Comp. St. § 9614), and District Court rule 14, requiring all sales to be at public auction, unless otherwise ordered, and that notice stating time of sale shall be published, *held* invalid.

**3. Bankruptcy ⊂⊃257—Sale of bankrupt estate by trustee, otherwise than as directed by statute, is invalid.**

Power of trustee to sell bankrupt estate is wholly statutory, and sale otherwise than statute directs will not be valid.

**4. Judgment ⊂⊃15—Adjudication by court in case where it has no jurisdiction is utterly void.**

When a court transcends limit prescribed by law, and assumes to act when it has no jurisdiction, its adjudication will be utterly void, and will have no effect, either as estoppel or otherwise.

**5. Bankruptcy ⊂⊃261—Notice to bankrupt's creditors of meeting to consider sale of property held insufficient as notice of sale (General Order No. 18; Bankruptcy Act, § 30 [Comp. St. § 9614]; District Court rule 14).**

Notice of meeting to bankrupt's creditors to consider whether there should be a sale of bankrupt's property *held* insufficient as notice of sale at public auction of bankrupt's property, in accordance with General Order No. 18, adopted by Supreme Court, pursuant to Bankruptcy Act, § 30 (Comp. St. § 9614), and District Court rule 14.

**6. Bankruptcy ⊂⊃261—Defective and inadequate description of bankrupt property in notice of sale is fatal.**

Defective and inadequate description of property of bankrupt estate in notice is fatal

to sale, even though notice was addressed to public and complied with law and rules.

**7. Bankruptcy ⊂⊃261—Notice of sale of bankrupt's real estate must state time and place.**

Notice of sale of bankrupt's real estate must contain statement of time and place of sale.

**8. Judicial sales ⊂⊃35—Rule forbidding setting aside judicial sales, except for reasons authorizing setting aside sale between individuals, held inapplicable, where there was no jurisdiction.**

Rule that judicial sales should not be set aside after confirmation, except for reasons that would cause setting aside of sale between individuals, has no application, where there was no jurisdiction to make judicial sale.

**9. Bankruptcy ⊂⊃269—Gross inadequacy of price needs but slight additional support to warrant setting sale of bankrupt's real estate aside.**

Gross inadequacy of price for bankrupt's real estate needs but slight additional support, such as absence of description of property, lack of statement of time and place of sale, or agreement among bidders, to warrant setting sale aside, even though properly made in other respects.

**10. Bankruptcy ⊂⊃269—Bankrupt's creditor, receiving notice of sale, was not estopped to question validity thereof, and seek to set it aside.**

Creditor, having received notice of sale of bankrupt's real estate, did not waive illegality of sale, and was not estopped from questioning validity, and seeking to set it aside for failure to publish proper notice, in accordance with Supreme Court General Order 18 and District Court rule 14, particularly so where such creditor was unaware of agreement among bidders, and after learning that another purchaser would have paid more for property, had he known of sale, moved promptly to set aside sale before delivery of deed.

**11. Bankruptcy ⊂⊃263—Sale of bankrupt's property in violation of statute cannot be made valid by participation and consent of creditors.**

Sale of bankrupt's property, utterly invalid because made in violation of statute, cannot be made valid by the presence, participation, and consent of one or more creditors, or referee, or trustee, or all combined.

**12. Estoppel ⊂⊃90(1)—Knowledge or notice of one's rights is necessary to make acquiescence and assent effective as estoppel.**

Knowledge or sufficient notice of one's rights is necessary to make acquiescence and assent effective as estoppel, and must also be accompanied by acts or conduct which affect or interfere with the relation or situations of parties, or are inconsistent with repudiation.

**13. Evidence ⊂⊃65—Bankrupt's creditors and purchaser are equally presumed to know law relative thereto.**

Both creditor of bankrupt and purchaser of property at sale are equally presumed to know law relative to sale of such property.

**14. Estoppel ⊛94(2)—Silence of bankrupt's creditor, on failure of sale of property to comply with law, held not to estop him from questioning validity.**

Silence of bankrupt's creditor as to failure of notice of sale of bankrupt's property to comply with law cannot work estoppel against his questioning validity of sale, in that it, in any event, constituted no more than an opinion on a question of law.

In Bankruptcy. In the matter of the Bankruptcy of the Lake Champlain Pulp & Paper Corporation. On petition to review orders of the referee in bankruptcy denying a motion to vacate and set aside sale of real property and confirming such sale. Orders reversed, and motion to set aside sale granted.

George J. Hatt 2nd, of Albany, N. Y., for petitioner.

James McPhillips, of Glens Falls, N. Y. (C. E. Fitzgerald, of Glens Falls, N. Y., of counsel), for H. M. Nelson and International Paper Co.

COOPER, District Judge. This is a petition by a creditor, Thomson Douglas, who is also one of the officers of the bankrupt, to review the orders of the referee in bankruptcy, one dated March 7, 1927, and one dated March 30, 1927, denying his motion to vacate and set aside the sale of the real property of the bankrupt, made February 3, 1927, and the order confirming such sale.

The petitioner, Douglas, is a creditor with proved claims of about $70,000, out of a total of proved claims amounting to about $125,000. Holders of a majority in amount of the remaining claims are nonresidents of Plattsburg, the city in which the property is located. There are also local priority claimants for a few hundred dollars.

The bankrupt corporation filed a voluntary petition on December 20, 1926, and a trustee was elected on January 6, 1927. On January 16th the trustee petitioned the referee in bankruptcy for a sale at public auction of "all real and personal property of the bankrupt at such lots as will accommodate the greatest number of bidders or prospective purchasers, and it is desirable that such sale be had at the earliest date possible that it can be lawfully held."

Whereupon a notice was made and signed by the referee, and published once, viz. January 21, 1927, in one of the official papers in Clinton county, and a copy of the notice, together with a letter, signed by the trustee, giving information about the estate of the bankrupt, but not stating the value fixed by the appraisers, was mailed to each creditor. The published notice is in full as follows:

"In the District Court of the United States for the Northern District of New York.

"In the Matter of Lake Champlain Pulp and Paper Corporation, Bankrupt. No. 12937.

"To the Creditors of the Lake Champlain Pulp & Paper Corporation and the Holders of Claims Against and Liens on Its Property:

"Notice is hereby given that on the 3d day of February, 1927, at 1:30 p. m., there will be a meeting of the creditors and parties in interest of the above-named bankrupt, at the office of Thomas B. Cotter, Esq., attorney for the trustee, 38 Clinton street, in the city of Plattsburg, in said district, to:

"1. Consider the petition of the trustee, praying for a sale of all the real and personal property of the bankrupt at public auction to the highest bidder, and, if such sale is directed, then to attend such sale to be held in said city later on the same day.

"2. Determine whether the real estate shall be sold in parcels, or as a whole, whether it shall be sold free and clear of all incumbrances, or subject to vendor's lien of $65,000 and interest from August 1, 1926, and accrued but undetermined taxes.

"3. Consider and act on the claims made by certain vendors for the return of property sold and delivered by them to the bankrupt just prior to the adjudication.

"4. Declare a dividend from the avails of the sale of the bankrupt property, if the amount received will justify the same.

"5. Attend an application that will be made after the sale, if held to confirm the same, and

"6. To transact any and all other business that may properly come before that meeting.

"Dated Malone, N. Y., January 20, 1927.
"William P. Badger,
Referee in Bankruptcy.

"Thomas B. Cotter, Attorney for Trustee,
"38 Clinton Street, Plattsburg, N. Y."

The bankrupt's real estate, according to the trustee's petition for the sale, consisted of—

"A large plot of ground on the north side of Bridge street, south of the main line of the Delaware & Hudson Railway in the city of Plattsburg, on which is located two railway spur tracks leading to the property; the paper mill, in which is located two 72-inch tissue paper machines; an office build-

ing located between the paper mill and the street; a three-story brick building, located some distance from the paper plant at the extreme westerly edge of the plot, and other old and unused buildings. The greater portion of the vacant land on said plot and the brick building leased by a wholesale clothing jobber, as well as the shed rented for storage, is located westerly of Green street, which runs northerly and southerly from Bridge street to the right of way of the Delaware & Hudson Railroad.

"Another portion of the bankrupt's real estate, which consists of a hydraulic power plant, is located on the north side of Bridge street east and adjoining the Saranac river, and which is entitled to the entire flow of the Saranac river at that point. There is located on this property a one-story stone power house, in which is installed an electric generating station, and this power plant is connected with the paper mill by an underground flume, and, as your petitioner is informed and believes, the power plant can be best used, and has its greatest value if used, in connection with the portion of the bankrupt's property lying on the north side of Bridge street."

This property was bought by or for the bankrupt in 1921 for $100,000, of which $35,000 has been paid, leaving a balance due of $65,000. There has been no default in the performance of the contract of purchase. After such purchase, various replacements of old machinery and purchase or installation of new machinery was made.

On September 16 and 17, 1925, an inspection and valuation of this property was made by Messrs. Allen, Ferguson, and Murphy. In their report appears the following:

"The property is situated in Plattsburg, N. Y., a town of 10,000 population, and comprises three separate parcels, located at the north of and along the Saranac river, as follows:

"(a) Hydroelectric development at the first bay on the river and just north of Bridge street, supplying sufficient electric power for the requirements of the paper mill.

"(b) An undeveloped water power site, approximately one mile up the river from the mill, known as the 'South Catherine street property,' and capable of development to supply sufficient power to manufacture from 2,500 to 3,000 tons of ground wood pulp per year.

"(c) Paper mill on the north side of Bridge street, east of the river, capable of manufacturing 15 tons per 24 hours of toilet, toweling, napkin papers and tissue in jumbo rolls only, and with hydraulic power facilities for manufacturing its own ground wood pulp."

### Valuation of Properties (Improvement Completed).

| | |
|---|---|
| Hydroelectric station and hydraulic power facilities supplying ground wood pulp and power requirements of paper mill | $160,000 |
| Paper Mill: Two 76-inch cylinder paper machines, 15 tons' capacity per 24 hours, Ground Wood Pulp Mill: 8 tons' capacity per 24 hours. | 300,000 |
| Real estate | 5,000 |
| South Catherine street water power site (undeveloped) capable of producing no less than 2,500 tons of ground wood pulp per year | 35,000 |
| Total valuation | $500,000 |

The referee appointed appraisers, consisting of the secretary of the bankrupt, an officer of another paper company in Plattsburg, and a wholesale dealer of plumbing supplies, who on January 15, 1927, appraised the real estate of the bankrupt at $75,000, but the petitioner protested to the appraisers that such appraisal was too low.

At the meeting held February 3, 1927, at 1:30 p. m., in response to the above notice, and in accordance with the same, the creditors voted for an immediate sale at public auction. It was decided that the property was to be sold free and clear of all incumbrances. The sale was held immediately after the creditors' meeting and at the same place. There could be, of course, no publication or service of any notice of sale, nor other or further notice to any persons. The entire bankrupt's real estate was struck down to one H. M. Nelson for $66,500, subject to accrued taxes.

Apparently the only persons present at the sale, besides the purchaser, who lived in New York City, and who had been especially invited to attend the meeting and proposed sale, were the referee, the trustee and his attorney, Johnson the conditional contract vendor who had a lien of $65,000 against the property, the petitioner, an officer of another paper mill, who had a large claim against the bankrupt, various attorneys, several of whom presented claims which were allowed at the meeting, and one O'Brien, a banker of Plattsburg.

After the bidding reached $66,500, the only bidders were Johnson, the conditional contract vendor, and Nelson, the successful

bidder. Certain articles of personal property were sold for about $1,300 to O'Brien. O'Brien was not a bidder on the real estate. Nelson and O'Brien agreed before the sale that Nelson should bid in the property and take the water power for two-thirds of the purchase price, and that O'Brien should take the remainder of the property for the other one-third.

The meeting of the creditors of the bankrupt had been adjourned until after the sale, for the purpose of confirming the sale and upon reconvening, the trustee reported the sale of the bankrupt real estate to Nelson for $76,000, and, there being no objection to the confirmation of the sale, an order was made by the referee confirming the sale. The purchase price has since been paid in full, two-thirds by the purchaser's undisclosed principal, the International Paper Company, and the remainder by O'Brien, who has died since the sale, and who, there is some reason to believe, was acting for the Delaware & Hudson Company, whose president had previously conferred with petitioner concerning certain changes in its roadbed, for the carrying out of which a portion of the lands of the bankrupt were desirable, if not necessary. The deed had not been delivered at the time of the petitioner's application herein, and has not since been delivered.

The petitioner, Douglas, was present at the meeting of creditors at which the sale was ordered, at the sale, and at the adjourned meeting of creditors, when the sale was confirmed, and made no objections to the sale, or the confirmation of the sale. At that time he had no knowledge of the undisclosed principal of the purchaser, nor of the aforesaid arrangement made between the purchaser and O'Brien.

On February 26, 1927, the petitioner herein filed a petition with the referee, asking that the order of confirmation be set aside, and that an order be made vacating the sale, and directing a resale of the bankrupt's property. This application was supplemented by an affidavit of one Mr. Bouyea, in which he recited that he did not know the sale was to take place, and that, had he known of such sale, he would have attended the same and offered a bid of $86,000, and he tendered with his affidavit an offer to pay $86,000 for the said property and delivered a certified check for $8,600, being 10 per cent. thereof.

Upon the filing of the petition the referee granted an order to show cause returnable March 7, 1927, at which time the trustee through his attorney joined in the petitioner's application. On the hearing of this motion, counsel for Nelson and the International Paper Company objected to an order setting aside the sale and ordering a resale, and offered in evidence a record of all prior proceedings. At the same hearing the petitioner filed another affidavit of Mr. Bouyea, offering to increase his former bid to $90,000, accompanying which was a certified check for $400. On March 12, 1927, the referee made an order denying the petition of Mr. Douglas.

On March 19, 1927, the petitioner herein filed another petition with the referee, asking that the order of March 7th be modified, by making the denial of the application without prejudice to a renewal of the same, and also that upon his petition and all prior proceedings the sale of February 3, 1927, and the order confirming the same, be vacated and set aside, and the property be again sold upon due and proper notice to the public. This petition set up much new matter, among other things that the notice of sale was not in form an order; that there was not a sufficient notice for a public sale, because the notice was not addressed to the public, did not invite the public to attend and bid at the sale, and was not published as required; that the notice of sale did not contain a description of the property to be sold; that there was no authority to sell the bankrupt's property free and clear of all incumbrances; that the price received was grossly inadequate; and that the agreement made between the bidder, Nelson, and O'Brien that the latter would not bid upon the property, but that Nelson should bid it in, and later divide the same with O'Brien, was prejudicial to the interests of the bankrupt estate, and with the other defects constituted a legal fraud upon the bankrupt's estate.

By reason of certain allegations concerning the alleged connection of the trustee's attorney with the purchasers, Nelson and O'Brien, which the trustee's attorney says was unfair and untrue, the trustee did not actually join in the second application to set aside the sale, lest by so doing he seem to adopt the allegations relating to his attorney, but the trustee and his attorney did not oppose the application of the petitioner.

The referee granted an order to show cause on this petition, which was returnable March 28, 1927, and after counsel was heard on behalf of all the parties, and certain proof and briefs were submitted, the referee made an order, dated March 30, 1927, in which he denied the second petition.

The petitioner has filed a petition in this court for a review of the orders made by the referee, dated March 7, 1927, and March 30, 1927, and the record has been certified to this court by the referee. The petitioner contends that there was no valid sale of the property of the bankrupt and asks for a resale, asserting that the property will sell at a properly advertised public auction, not only for the $90,000 already assured, but for a sum in excess thereof.

The bankruptcy law does not make specific provision for the sale of the bankrupt's property. It merely provides in section 58a that creditors shall have 10 days' notice of all proposed sales of bankrupt property. Section 30 of the Bankruptcy Act (Comp. St. § 9614) gives the Supreme Court the power to prescribe all necessary orders as to procedure and for carrying the act into force and effect. The Supreme Court pursuant to this provision adopted general orders. General Order No. 18 covers the sale of property. This order reads as follows:

"Sale of Property.

"1. All sales shall be by public auction unless otherwise ordered by the court.

"2. Upon application to the court and for good cause shown, the trustee may be authorized to sell any specific portion of the bankrupt's estate at private sale, in which case he shall keep an accurate count of each article sold, and the price received therefor, and to whom sold, which account he shall file at once with the referee.

"3. Upon petition by a bankrupt, creditor, receiver, or trustee, setting forth that a part or the whole of the bankrupt's estate is perishable, the nature and location of such perishable estate, and that there will be a loss if the same is not sold immediately, the court, if satisfied of the facts stated, and that the sale is required in the interest of the estate, may order the same to be sold, with or without notice to the creditors, and the proceeds to be deposited in court."

The District Court may also adopt rules not in conflict with the statute or general orders. The court in the northern district of New York has adopted rules, No. 14 of which reads as follows:

"Sales of Bankrupt's Property.

"Public sales of real estate of bankrupts by trustees in bankruptcy shall be upon such notice as to time as the referee directing the sale shall direct but such notice must be in all cases published and served on all creditors and persons in occupation of the premises either personally or by mail at least ten days prior to such sale."

[1] The General Orders and District rules have the effect of statutes. Wilkinson v. Walker (D. C.) 292 F. 395, 402; J. B. Orcutt Co. v. Green, 204 U. S. 96, 102, 27 S. Ct. 195, 51 L. Ed. 390; In re Gerber (C. C. A.) 186 F. 693.

[2] Tested by General Order No. 18 and District Rule No. 14, there was no valid sale of the bankrupt's estate at public auction. General Order No. 18 requires all sales to be at public auction, unless otherwise ordered by the court. There are only two ways in which the court may otherwise order the sale to be made. Upon good cause being shown the court may authorize the trustee to sell any specified portion of the bankrupt's estate at private sale, but not the whole thereof. Upon petition showing that a part or the whole of the bankrupt's estate is perishable, the court may order the sale of such perishable portion of the estate, with or without notice to the creditors.

There is no suggestion that this land, buildings, machinery, water rights, or any part of the property of the bankrupt was or is perishable. There was no application for the private sale of either a "specified portion" or the whole of the bankrupt's estate. Consequently no exception to the requirement of sale at public auction can be found in the case at bar. Hence the only legal sale of the real estate of the bankrupt was and will be at public auction. There was not only failure to comply with General Order 18, but there was also failure to comply with District rule 14, because that rule requires in all cases of the sale of real estate that notice of the sale, stating the time of sale fixed by the referee, shall be published and served on all creditors and persons in occupation of premises at least 10 days prior to such sale.

[3] The power of the trustee to sell the bankrupt estate is wholly statutory and a sale otherwise than as the statute directs will not be valid. Black on Bankruptcy, § 469, citing Wisner v. Brown, 50 Mich. 553, 15 N. W. 901.

[4] When a court transcends the limit prescribed for it by the law, and assumes to act when it has no jurisdiction, its adjudications will be utterly void and of no effect, either as an estoppel or otherwise. Herman on Law of Estoppel, § 52, p. 45.

It is apparently not seriously contended by the attorneys for the purchaser at the alleged sale that there was a sale of this prop-

erty at public auction in compliance with law, and, if such a contention were made, it could not be upheld.

[5] The notice published was not a notice of sale at public auction of the bankrupt's property, to which the public was invited to attend and bid. No notice of a sale at public auction was ever published. The notice published was addressed only to creditors and holders of claims and liens against the property, and was merely a notice of a meeting of creditors to consider whether or not there should be a sale of the bankrupt's property at public auction, and the words in the notice "and if such sale is directed then to attend such sale to be held in said city later on the same day" are mere surplusage, not being essential to the meeting of creditors to consider the proposed sale, and not being in any sense a notice that a sale of the described real or personal estate of the bankrupt would take place on that day, or at any special time, or at that place, or at any place.

A similar notice, like the one in the case at bar, addressed, not to the public, but only to creditors, and the holders of claims against the liens on its property, has been held not to be a notice of sale at public auction. In Nevada-Utah Mines v. Smelters' Corporation, 202 F. 126, 128, the Circuit Court of Appeals in the Second Circuit held as follows:

"The District Court confirmed the order of the Referee, on the ground that the sale was a public one, to which all bidders were invited by sufficient advertising. We cannot agree with this conclusion because the advertisement was addressed only to 'creditors, stockholders, and other parties in interest,' and the meeting to be held was stated to be a meeting of such persons. It seems to us quite clear that many strangers, reading the advertisement, would conclude that they were not entitled to be present at the meeting. The essential feature of a public sale was lacking, viz. that the public be invited to attend and bid."

Only creditors and persons who had been specifically invited to attend the meeting of creditors in the case at bar, or who had advance information that the meeting would decide to direct the sale, which members of the general public, if they saw the notice, would not have, were present at such a sale, and substantially the only bidders for this extensive and valuable property were the successful bidders, specifically invited to be present, and one Johnson, who was the contract vendor of the property; at least these two were the only bidders after the bids reached the sum of $66,500, which sum was but $1,500 more than the amount of liens against the property. Bouyea makes affidavit that, had he known of the sale, he would have been present and bid $90,000.

[6] Reference to the only notice published will show that there is absolutely no description of the real property of the bankrupt by which any one could determine what was to be sold. The only reference to the property is contained in the words "the real and personal property of the bankrupt." A defective and inadequate description of the property, even if the notice was addressed to the public and otherwise complied with the law and rules, is fatal to the sale. In the Matter of Irvine, 255 F. 168, the District Court said: "The advertisement quoted above was wholly inadequate to apprise the public of what was being sold," and confirmation of the sale was refused.

[7] Where the federal statutes provide for judicial sales of property other than in bankruptcy, it is expressly provided that notice of sale must describe the real property to be sold. Other requisites of the notice of sale are a definite statement of the time and place at which the sale will take place. There was no statement in the notice of any time and place of sale. "An order of the court for the sale of a bankrupt's property should fix the time and place for the sale, and will be irregular and void, if omitting these details." Black on Bankruptcy (3d Ed.) § 469; citing Osborne v. Baxter, 4 Cush. (Mass.) 496.

There was therefore no jurisdiction in the referee to order such a sale of the real estate upon the petition of the trustee for a public auction sale of the bankrupt's estate, nor was there any power of the trustee, with or without order of the referee, to make the sale that was made. This was in essence a private sale, as was the sale in the Nevada-Utah Case, supra, but was not valid as a private sale, as was the sale in that case, for the property sold here was real estate, which could not be sold at private sale, under District rule 14 and General Order 18, except as to a specified portion, upon good cause shown, which was not attempted here, while in the Nevada-Utah Case it was personal property, which could be sold at private sale, if sold in specified portions, as was done in that case.

The price was also grossly inadequate. The sale being made free from lien, as it should not have been, required the purchaser to pay the full purchase price in cash for this

valuable property. The property to be sold was the bankrupt's equity only. A sale of the property subject to the $65,000 contract of sale would have enabled purchasers to buy upon a cash payment of $65,000 less than upon a sale free from lien. The field of purchasers is usually greatly limited by selling valuable property free from liens, which otherwise might remain on the property. The assurance that on the resale the property will net the creditors not less than $25,000, instead of the present $11,000, shows an inadequacy of price that is not without significance.

[8] The public policy which requires that there should be stability of judicial sales, and that such sales should not be set aside after confirmation, except for such reasons as would cause the setting aside of sales between individuals, has no application, where there was no jurisdiction to make the judicial sale. In 24 Cyc. 36, 37, it is said: "The order of confirmation gives to the sale the judicial sanction of the court, and where made relates back to the time of sale, and cures all defects and irregularities, *except those founded on want of jurisdiction or fraud.*"

[9] Moreover, gross inadequacy of price for the bankrupt's property (the equity above the balance unpaid on the contract price) needs but slight additional support, such as utter absence of description of property to be sold, lack of statement of time and place of sale, an agreement among two bidders to let one alone bid, and to divide the property between them afterward, to warrant setting the sale aside, even if it had been in other respects properly made. In re Palmer (D. C.) 13 F. 870; Graffam v. Burgess, 117 U. S. 180, 191, 192, 6 S. Ct. 686, 29 L. Ed. 839; Ballantyne v. Smith, 205 U. S. 285, 290, 27 S. Ct. 527, 51 L. Ed. 803. But the court prefers to base its decision here on the ground that there was no jurisdiction to make the sale as made. The sale was void.

[10] The purchaser's chief contention here is that, since the purchaser is willing to pay the consideration and complete the purchase of the property, the petitioner by his acts and conduct waived all so-called irregularities of the sale, and is estopped from questioning the sale at this time. It is true that the petitioning creditor received the published notice, was present at the meeting of creditors called therein, not only made no objection to the sale taking place, but even endeavored to procure persons to come and bid at the expected sale, and made no objection at the time to the confirmation of the sale. But he should not, on that account, except upon excellent authority, which seems to be lacking here, be held to have waived the illegality of the sale, and to be estopped from questioning its validity and seeking to set it aside. Especially is this so when he was unaware of the agreement among certain bidders not to bid against each other, and that another person would have paid far more, had he known of the sale, has moved promptly before the delivery of the deed, and there will be no irreparable damage or serious detriment to innocent third persons.

[11] It can hardly be seriously contended that a sale, utterly invalid, because made in violation of statute, can be made valid by the presence, participation, and consent of one or more creditors, or the referee, or trustee, or all combined. Statutory provisions covering the sale of a bankrupt's real estate are not thus to be lightly set aside. It is not a question of mere inadequacy of price at a legal sale, with nothing else involved; nor is it a question of slight or curable irregularities in an otherwise valid sale, to which the petitioner might have objected at the time, which might have been cured, had he objected, which were harmless in any event, and of which he is now seeking to take advantage to another's detriment; nor are the usual grounds of estoppel to be found in this case.

[12] Knowledge or sufficient notice of one's rights is necessary to make acquiescence and assent effective as estoppel, and must also be accompanied by acts or conduct which affect or interfere with relations or situations of parties or are inconsistent with repudiation. This is necessary as to things void or voidable as between the parties, when one has such knowledge and the other has not. Rothschild v. Title Guarantee & Trust Co., 204 N. Y. 464, 97 N. E. 879, 41 L. R. A. (N. S.) 740; Vohmann v. Michel, 185 N. Y. 420, 78 N. E. 156, 113 Am. St. Rep. 921; 3 Pomeroy's Jurisprudence (3d Ed.) §§ 816–821, 965.

How much less ground for estoppel is there in such a case as this, where the subject of the knowledge is a matter of law—a sale in compliance with law—as to which each party has equal presumptive knowledge and as to which learned lawyers disagree. In Sturm v. Boker, 150 U. S. 334, 14 S. Ct. 99, 37 L. Ed. 1093, it was held that a statement by complainant that he understood the goods in question were his did not estop him from subsequently taking a different position as to the true interpretation of the written instrument. The court said:

"This language did not mislead or induce either the defendants or the insurance companies to alter or change their position in any respect whatever, nor influence their conduct in any way. Both the defendants and the insurance companies had the written contracts before them, and were presumed, as a matter of law, to know their legal effect and operation. What the complainant said in his testimony was a *statement of opinion upon a question of law, where the facts were equally well known to both parties.* Such statements of opinion do not operate as an estoppel. If he had said, in express terms, that by that contract he was responsible for the loss, it would have been, under the circumstances, only the expression of an opinion as to the law of the contract, and not a declaration or admission of a fact, such as would estop him from subsequently taking a different position as to the true interpretation of the written instrument."

In Brant v. Virginia Coal & Iron Co., 93 U. S. 326, 337 (23 L. Ed. 927) it was said: "Where the condition of the title is known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel." So in Brewster v. Striker, 2 N. Y. 19, and Norton v. Coons, 6 N. Y. 33, and approved in Chatfield v. Simonson et al., 92 N. Y. 209, 218, where it was ruled "that the assertion of a legal conclusion, where the facts were all stated, did not operate as an estoppel upon the party making such assertion."

In Brant v. Virginia Coal & Iron Co. et al., 93 U. S. 326, 23 L. Ed. 927, the headnote reads as follows: "Where the estoppel relates to the title of real property, it is essential to the application of the doctrine that the party claiming to have been influenced by the conduct or declarations of another was himself not only destitute of knowledge of the true state of the title, but also of any convenient and available means of acquiring such knowledge. Where the condition of the title is known to both parties, or both have the same means of ascertaining the truth, there is no estoppel."

In the case of Rothschild v. Title Guarantee & Trust Co., 204 N. Y. 458 at page 462, 97 N. E. 879, 880 (41 L. R. A. [N. S.] 740) the court said: "A fraudulent purpose or a fraudulent result lies at the basis of the doctrine of equitable estoppel through silence or inaction. Actual or intended fraud is not an element essential to it. Neither affirmative acts or words, nor silence maintained with the fraudulent intention of deceiving, are indispensable elements of it. But it arises only when, relatively to the party invoking it or his privies, the omission to speak is an actual or constructive fraud. Its existence requires that the party against whom it acts remained silent when he had the opportunity of speaking and when he knew or ought to have known that his silence would be relied upon, and that action would be taken or omitted which his statement of the truth would prevent, and that injury of some nature or in some degree would result."

There is and can be no claim that the purchaser relied in any manner upon anything that the petitioner said, for he said nothing. Nor can there be serious claim that the purchaser relied upon the failure of the petitioner to disclose knowledge which the petitioner had and the purchaser had not, and which, if the purchaser had had it, would have deterred him from purchasing the property at the price paid by him.

[13, 14] The petitioner knew nothing, then, which he concealed and now discloses, and seeks to avail himself of, to the detriment of the purchaser. The petitioner then had no knowledge of the agreement between the purchaser and O'Brien, nor of the willingness of another person to pay more than 2¼ times as much for the bankrupt's equity, all of which he learned later. All the other matters of petitioner's knowledge related to the legality of the sale. This is a question of law, which both are presumed to know, and their knowledge of which was apparently alike. Even if it be assumed that the purchaser knew nothing about the failure to comply with the law, petitioner was under no obligation to speak, and no benefit did or could flow to him by silence. For petitioner's silence on that subject could not, under any circumstances, have greater effect than if he had made the direct representation to the purchaser that the sale was in all respects legal. As has been shown, such a statement is but an opinion on a question of law and cannot work an estoppel.

There seems no substantial ground, therefore, on which the petitioner can be deemed to be estopped. No authorities have been cited by the learned counsel for the purchaser, and none can be found by the research of the court, in which a creditor so vitally interested as is the petitioner, and who is not guilty of laches, has been held to have waived the utter absence of legality of a sale of bankrupt's property, or has been held estopped from questioning an illegal sale by any act

or conduct which has not resulted in serious loss and damage to an innocent purchaser. Reference to the cases on which the purchaser chiefly relies follows:

The case of Lansburgh v. McCormick, 224 F. 874, was a collateral suit to set aside a sale made under judgment of the federal court on the ground that the sale was not made on the premises sold, nor at the courthouse door of the county in which the land lies, as required by federal statute. In that case the complainant requested that the decree of sale be carried out as soon as possible, advertised the sale by pamphlets, was present at the sale, and, though filing exception to the report of the sale, made no allusion to the error ordering the sale of the premises at a place other than the courthouse door.

The sale was confirmed by the court, the consideration paid, the title passed to the purchaser, and the property subsequently sold to innocent third persons before the suit was brought. The Circuit Court of Appeals, Fourth Circuit, said: "The court *having jurisdiction to order the sale,* the mistake of directing that it be made at a place different from that required by the statute did not make the sale void for want of juridiction, but was an error to be corrected *by appeal or by direct application to the trial court.*" That court held that the conduct of the plaintiff "would estop him from now having the sale annulled after the rights of third parties have become involved."

In Re Torchia (C. C. A.) 188 F. 207, certain lienholders petitioned to review an order of distribution made by the District Court on the ground that no allowance for expenses of administration could be made out of the proceeds of the sale of the property ordered to be sold free from their liens, because the fund out of which their allowance was to be made was derived solely from proceeds of the sale of the real estate upon which the judgments of the petitioners were liens at the date of the bankruptcy.

In that case the Circuit Court of Appeals for the Third Circuit denied the petition, and in this respect the court said: "Not only did the petitioners now before the court have ample notice that the referee was being asked for an order to sell the bankrupt's real estate discharged of liens, but they made no objection thereto; and, after the order had been made, they not only took no steps to have it reviewed by the District Court, but they permitted the trustee to go on for months in the gradual execution of the order and in the

20 F.(2d)—28

distribution from time to time of the proceeds." It will be seen that in this case the jurisdiction to make the sale was not involved, and there is no similarity of fact.

The case of State Bank of Chicago v. Idaho-Oregon Light & Power Co. (D. C.) 219 F. 594, was a foreclosure of a corporate mortgage. There was no question of jurisdiction to make the sale, and there was no similarity of fact or analogy of any kind.

Rothschild v. Title Guarantee & Trust Co., 204 N. Y. 458, 97 N. E. 879, 41 L. R. A. (N. S.) 740, does not support the purchaser's claim of estoppel. In that case the son of the owner of real property executed a forged mortgage thereon. About one year after the forged mortgage was executed, the owner acquired full knowledge of the existence thereof, but nevertheless, without protest, notice, or claim of its invalidity, made a payment of the semiannual interest thereon, and six months later made another interest payment. Interest was paid by some one for two more years without notice or protest, and the owner then died. The son in the meantime disappeared. The suit was brought by the owner's executors to cancel the mortgage. The Court of Appeals, reversing the lower court, held that the executors were estopped from questioning its validity. The court said:

"The right of seeking restoration and payment from the person who accomplished or procured the forgeries was in itself a substantial and valuable one. * * * Caroline [the owner] could not by act or declaration diminish or thwart that right and not incur responsibility. * * * She by making the payments recognized the mortgage and the lien it seemed to create as real and existing, extended their existence and retarded or intercepted the natural growth and development of the rights and relations between the defendant and her son, and benefited her son and, presumptively, within her contemplation, herself. She could not be permitted to thereafter repudiate the mortgage."

The other cited cases are also without analogy, and do not support the petitioner's contention here, and need not be distinguished further. The orders of the referee must be reversed, and the motion granted to set aside the sale and direct a new sale at auction in compliance with the legal requirements.

The referee's certified question, though not adequately presenting the situation, must be answered in the affirmative.