**In the Matter**
**of**
**PAPER CORPORATION OF AMERICA,**
**Bankrupt.**
**No. 89418.**

United States District Court
S. D. New York.
Feb. 14, 1956.

O'Connor & Farber, New York City, Clendon H. Lee, New York City, of counsel, for I. Lawrence Lesavoy and others, petitioners.

Chauncey H. Levy and Sydney Basil Levy, New York City, for trustees.

Welsh, Trowbridge, Wilmer & Bills, Green Bay, Wis., Rodney C. Welsh, Green Bay, Wis., of counsel, for Charmin Paper Mills, Inc.

BICKS, District Judge.

I. Lawrence Lesavoy, the alleged sole stockholder of the bankrupt who claims to be an unsecured creditor and the owner of the beneficial interest in a first mortgage on the bankrupt's property, and three companies, allegedly unsecured creditors, controlled by Lesavoy, bring this petition to review an order made by Hon. Irwin Kurtz, Referee in Bankruptcy of this Court, authorizing the trusteees in bankruptcy to accept the offer of Charmin Paper Mills, Inc. to purchase for $600,000 in cash, free and clear of all liens and encumbrances, all the trustees' right, title and interest in and to the land and pulp and paper mill erected thereon, located at Cheboygan, Michigan, together with the fixtures, machinery, tools and equipment located in or about the premises and all inventory and supplies on hand.

A chronology of the events which led up to the making of said order will provide the background necessary for a proper consideration of the matter *sub judice*.

A petition for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., was filed by the now bankrupt on June 3, 1953. The petition was approved and a reorganization trustee appointed.

During the course of the reorganization proceeding applications were made by the trustee upon due notice for leave to sell the debtor's property free and clear of the lien of alleged mortgages thereon, the said lien to be transferred to the proceeds of the sale awaiting the outcome of an action then pending in the United States District Court in the Eastern District of Michigan to determine the validity of the mortgages. These applications were granted without opposition. The trustee did not, however, sell any of the debtor's property except for several items of machinery.

The Chapter X proceeding proved to be abortive. It extended over a period of approximately twenty months without a plan of reorganization being submitted to which the requisite consents were obtained. Accordingly, on February 11, 1955, the Court made an order adjudicating the debtor a bankrupt and directing that bankruptcy be proceeded

with pursuant to the provisions of the Bankruptcy Act. On March 18, 1955 Richard Green, Russell Knapp and William Otte were appointed trustees in bankruptcy and duly qualified as required by law. They have continued to act as such trustees to date.

Upon the petition of the bankruptcy trustees the Referee by order dated October 28, 1955 directed (a) that a special meeting of creditors be held on November 15, 1955 to consider an offer to lease the bankrupt's property with an irrevocable purchase option exercisable within eleven months for $400,000 free of all liens, *or* any further or better offers, and (b) that notice of the meeting be published in the Daily News Record at least ten days prior thereto and again on the day of the meeting, and further, that the notice be published in the New York Herald Tribune, Chicago News and Detroit Free Press and any other newspapers or trade publications and at such times as the trustees deem suitable. The trustees duly complied with the publication requirements of this order as well as with the statutory provisions for notice to creditors by mail.

Prior to the special meeting of creditors the Referee, after due notice to all alleged lienholders and without objection, authorized the bankruptcy trustees to sell the bankrupt's property "upon such terms as may be acceptable to the trustee and to the Court free and clear of all liens of the mortgages of (sic) the said property, as well as the liens claimed by the United States Government and the City of Cheboygan, and the claim of Lesavoy Industries, Inc. and that of the receiver of Lesavoy Industries, Inc." and directed that the liens and claims if any, and to the extent they are valid and enforceable be transferred to the proceeds of the sale.

On the eve of the special meeting the bankrupt filed a petition for arrangement under Section 321 of the Act, 11 U.S. C.A. § 721, and on the very day of the meeting obtained an order from a District Judge staying the administration of the estate other than pursuant to Chapter XI, 11 U.S.C.A. § 701 et seq., until the date fixed in the order for a hearing to determine whether the stay should be made permanent. This order was served upon the Referee as the special meeting was about to be convened. He made public announcement that the sale had been stayed and that the meeting could not proceed as planned. The meeting was adjourned to November 25, 1955. However, with the view of taking advantage of the presence of potential purchasers, but with the express understanding that no commitments of any kind could be made either on the part of the Court or the trustees, the Referee proceeded in an informal fashion to receive bids.[1] Full details were given concerning the nature and description of the property proposed to be sold. The best offer, submitted by the Charmin Paper Mills, Inc., was to purchase the property free of all liens for $600,000 in cash. As evidence of its good faith, the offeror deposited $60,000 to be applied on account of the purchase price if the stay were vacated and its offer ultimately accepted.

On November 22, 1955, the return date of the stay application, the matter was referred to the Referee. He proceeded to a hearing as to the desirability of a further stay of the bankruptcy proceedings and the feasibility of a proposed plan of arrangement. Mindful that an extended stay might result in a withdrawal of the $600,000 cash offer and that the property was uninsured and badly in need of repairs to protect it against the elements, the Referee granted a stay conditioned upon the filing of a $200,000 bond for the protection of the estate and for indemnity against loss thereto or diminution thereof, and the payment of $27,000 to be used by the

---

1. Petitioners in their brief charge the Referee with contumacious conduct in proceeding with the informal meeting in the face of the stay order. This reflection upon the learned Referee is gratuitous and entirely unwarranted. He demonstrated throughout a punctilious regard for the process of this Court.

trustees to the extent necessary for the care, maintenance, preservation and conservation of the debtor's physical assets, including custodial services, on or before November 25, 1955. The debtor felt aggrieved by said order and brought on a petition for review. The District Court confirmed the order in all respects except that the time for compliance with the conditions thereof was extended to December 12, 1955.

At the adjourned special meeting on December 13, 1955, the attorney for the trustees noted that the bankrupt had failed to comply with the conditions of the Referee's order as modified by the District Court. The bankrupt then moved for a further adjournment of the meeting which the Referee denied. The Charmin offer was withdrawn and the Referee proceeded with the meeting pursuant to his order of October 28, 1955. After a particularization of the property included in the proposed sale, Charmin Paper Mills, Inc. renewed its offer of $600,000 in cash. The amount of the said offer was in excess of the appraisal made by a court appointed appraiser. No higher or better offer was made and accordingly, on December 15, 1955, the Referee entered an order authorizing the trustees to consummate the sale to CHARMIN.[2] It is this order which is the subject of the present petition for review.

The objections raised by the petitioners in the main are premised on the theory that the sale was a public sale; they have no bearing upon the validity of a private sale. It must be determined, therefore, whether the sale was a public sale authorized by subdivision (1) of General Order in Bankruptcy No. 18 or a private sale within the purview of subdivision (2) of said General Order.

■ The pertinent statutory provisions relating to bankruptcy sales are:

(1) Section 70, sub. f, of the Act, 11 U.S.C.A. § 110, sub. f,—real and personal property shall, when practicable, be sold subject to the approval of the Court—such property shall not be sold otherwise than subject to the approval of the Court for less than 75 per centum of its appraised value—the Court shall appoint a competent and disinterested appraiser.

(2) Section 58, sub. a(4) of the Act, 11 U.S.C.A. § 94, sub. a(4),—creditors shall have at least ten days notice by mail of all proposed sales of property.

(3) General Order in Bankruptcy No. 18, 11 U.S.C.A. following section 53,[3]—

Subdiv. 1—all sales shall be by public auction unless otherwise ordered by the Court.

Subdiv. 2—the Court may for good cause shown authorize the trustee to sell the property of the estate or any specified portion thereof at private sale.

(4) Local Bankruptcy Rule 13(c)— sales shall be by public auction unless otherwise ordered by reason of special circumstances—sales shall be advertised (if in New York County in the Daily News Record[4]) at least ten days before the sale and on the day of sale—at least ten days notice of the sale shall be given in the manner and to the persons prescribed in the Act—the Court may for cause shown dispense with or modify such requirements and direct that shorter or no notice be given—the trustee may cause further advertising or notice to be given.

■ It is an essential feature of a public sale that the public be invited to attend and bid. The absence of such public invitation in the case of a private sale, however, will not vitiate it. In re Nevada-Utah Mines & Smelters Corp., 2 Cir., 1913, 202 F. 126. If the order directs the trustee to sell by private sale,

2. Petitioners complain that this order was entered without notice of settlement. Notice of settlement was neither requested by petitioners nor directed by the Court and under the circumstances was unnecessary. Local Bankruptcy Rule 20(b).

3. General Orders and local rules have the effect of statute. In re Brecher, 2 Cir., 1925, 4 F.2d 1001, 2 Collier on Bankruptcy, 14th Ed. Sec. 30.02.

4. Local Bankruptcy Rule No. 12.

no advertisement—as distinguished from notice to creditors of a proposed sale—is required. 4 Collier on Bankruptcy, 14th Ed. Sec. 70.98. While the word "private" is not to be found in the order of October 28, 1955, it is unmistakable that a private sale was contemplated. See In re Glantz, 2 Cir., 1933, 63 F.2d 787. The order expressly recites that a specific offer had been received and the purpose of the special meeting of creditors was to consider that or any further or better offers. Patently, the notice was of a special meeting of creditors in the usual form employed in this district for the purpose of notifying creditors under Section 58, sub. a(4) before effecting a private sale and not an advertisement of a public sale.[5] General Order in Bankruptcy No. 18(2) authorizes the Referee to order a private sale upon good cause shown. There was a clear showing of good cause to sustain the Referee's order. The papers upon which said order was granted and the proceedings had in the matter since the filing of the petition for reorganization lend ample support for and demonstrate the good, if not compelling, cause for the making of the order. The principal asset of the bankrupt was its mill property. It was shut down when the petition for reorganization was filed and has remained closed since. During this period of upwards of two years the property has not been adequately maintained to prevent and resist the effects of exposure to the elements. The roof eventually developed holes, hundreds of windows were broken and rain and snow found their way in with the result that the unprotected machinery was damaged in varying degrees, some to the point of complete uselessness. Due to lack of funds the trustees have been unable to carry insurance on the property. This absence of insurance makes the possibili-ty of destruction by fire an ever-present threat—a risk to which a prudent fiduciary should not subject the estate's assets any longer than the circumstances permit. The persons interested in the estate, including the petitioners, were given the opportunity by order of the Court to advance to the reorganization trustee against certificates of indebtedness, monies to pay the premiums on insurance to protect the estate against fire and vandalism and other hazards. Neither the petitioners nor any other party in interest availed themselves of this opportunity. The unsatisfactory and highly undesirable role of self-insurer was imposed by necessity upon the trustees. Unmindful of or with a complete disregard for the disastrous consequences to all persons interested in the estate of the bankrupt which would ensue upon a conflagration, petitioners have been content to stand by and move only when it appeared that the trustees were proceeding in the direction of a sale. Such conduct is consistent with inability to provide the relatively limited funds required for the purpose, bad faith, a recognition that their asserted liens and claims will not successfully withstand the attack of the trustees or, perhaps, that the property is not worth protecting. The trustees' inability to sell the property throughout the many months it has been *in custodia legis*, the wasting nature of the assets, the inability or omission to carry appropriate insurance, to cull only some of the facts from the record, was sufficient to warrant the private sale.

It is contended by the petitioners that the notice of meeting was misleading and defective in that it advised the creditors of an offer to lease and not of a proposed sale. Petitioners do not claim that they were misled and the rec-

---

**5.** The petitioners' reliance on In re Lake Champlain Pulp & Paper Corp., D.C. N.D.N.Y.1927, 20 F.2d 425, as holding that a private sale could not be had herein is not well founded. The Court there held that a showing of good cause was not attempted and also, under General Order in Bankruptcy No. 18 as it then existed, the Court may authorize a trustee to sell any specified portion of the bankrupt's estate at a private sale but not the whole thereof. In 1939, General Order in Bankruptcy No. 18 was amended to authorize the sale of all the property of the bankrupt's estate as well as any specified portions at private sale.

ord is barren of evidence that anybody else was misled. True, the notice mentions an offer to lease but the term of the lease is but one year and, as the notice sets out, it was coupled with an option exercisable within eleven months to purchase free of all liens and encumbrances for the sum of $400,000. It is significant that the option was not for an extension of the term of the lease but to purchase the property. No person interested in the subject matter of the notice would fail to realize that the proposed one-year lease was but the first step in a sales transaction and that the trustees' purpose was to effectuate a sale upon the best available terms. In addition, the notice expressly stated that further and better offers would be considered without limitation as to the nature of such offers. The notice, obviously, was not misleading.[6]

Petitioners urge that there will be a greater return for creditors under the debtor's proposed plan of arrangement than if the sale is consummated. Therefore, they suggest, the sales price is grossly inadequate. The Referee was faced with a choice between the reality of an offer in hand and the prospect of the acceptance, confirmation and consummation of a plan of arrangement. The Referee chose not to pursue the illusory. He refused to modify or vacate his order of November 22, 1955. The belated filing of the Chapter XI petition, the apparent unwillingness or inability of the debtor to protect the estate against loss thereto or diminution thereof in the event its proposed plan failed of fruition, and the failure of petitioners to bid for the property at the special meeting, clearly support the Referee's decision to proceed with the administration of the estate in bankruptcy.

The Court finds that the sale of December 13, 1955 was a private sale and that all provisions of law relating to a private sale have been complied with. In view of this determination it is not necessary to inquire into whether the sale also qualifies as a valid public sale.

The petition for review is dismissed and the order of the Referee dated December 15, 1955 is affirmed.

---

6. Petitioners' allegation that confusion prevailed at the creditors' meeting finds no support in the record. The description of the property was sufficiently explicit and there was full opportunity for intelligent bidding. If any confusion existed it does not seem to have reflected itself in the bidding.